

ORIGINAL

1 of 2

FILED

AUG - 7 2007

CLERK U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY                Deputy Clerk

ENTERED

AUG - 8 2007

CLERK, U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY                Deputy Clerk

LODGED

AUG - 6 2007

CLERK U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA

1  **WEILAND, GOLDEN,**
   **SMILEY, WANG EKVALL & STROK, LLP**
2  Evan D. Smiley, State Bar No. 161812
   Philip E. Strok, State Bar No. 169296
3  Hutchison B. Meltzer, State Bar No. 217166
   650 Town Center Drive, Suite 950
4  Costa Mesa, California  92626
   Telephone:  (714) 966-1000
5  Facsimile:  (714) 966-1002

6  General Insolvency Counsel for Debtor
   and Debtor-in-Possession

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**SANTA ANA DIVISION**

| | |
|---|---|
| 11  In re | Case No.: SA 06-11444 ES |
| 12  SPECTRUM RESTAURANT GROUP, INC., a Delaware corporation; GRANDY'S, INC., | Chapter 11 Case |
| 13  a California corporation; SPOONS RESTAURANTS, INC., a Texas | **ORDER GRANTING** |
| 14  corporation; SPECTRUM FOODS, INC., a California corporation; CRABBY BOB'S | **DEBTOR-IN-POSSESSION'S MOTION FOR ORDER AUTHORIZING AND APPROVING:** |
| 15  FRANCHISE CORP., a California corporation; LOCAL FAVORITE, INC., a | |
| 16  California corporation; Substantively consolidated reorganized debtors under | **(1)  SALE OF CERTAIN ASSETS OF THE ESTATE FREE AND CLEAR OF** |
| 17  Case No. SA 03-15911 ES, | **LIENS, CLAIMS, AND INTERESTS;** |
| 18 | **(2)  LEASE TERMINATION AGREEMENT; AND** |
| 19 | |
| 20 | **(3)  COMPROMISE OF CONTROVERSY PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 9019** |
| 21 | **[Spoons Grill & Bar - Campbell located at 1555 S. Bascom Avenue, Campbell, California 95008]** |
| 22 | |
| 23 | |
| 24  Debtor and Debtor-in-Possession. | **DATE:  August 7, 2007** **TIME:  10:30 a.m.** **CTRM:  5A** |
| 25 | |
| 26 | |

27

28

1    On August 7, 2007 at 10:30 a.m., the motion for order authorizing and approving:

2    (1) sale of certain assets of the estate free and clear of liens, claims, and interests;

3    (2) lease termination agreement; and (3) compromise of controversy pursuant to Federal

4    Rule of Bankruptcy Procedure 9019 (the "Motion")[1] filed by Spectrum Restaurant Group,

5    Inc., a Delaware corporation ("SRG"); Grandy's, Inc., a California corporation

6    ("Grandy's"); Spoons Restaurants, Inc., a Texas corporation ("Spoons"); Spectrum

7    Foods, Inc., a California corporation ("Spectrum"); Crabby Bob's Franchise Corp., a

8    California corporation ("Crabby Bob's"); Local Favorite, Inc., a California corporation

9    ("Local Favorite"); Substantively consolidated reorganized debtors under Case No. SA

10   03-15911 ES (collectively, the "Debtor"), came on for hearing before the above-

11   captioned Court.  Hutchison B. Meltzer of Weiland, Golden, Smiley, Wang Ekvall &

12   Strok, LLP, appeared on behalf of the Debtor.  All other appearances are as noted on the

13   Court's record.

14   Having reviewed the Motion and all papers filed in support thereof and in response

15   thereto, having considered the oral arguments of the parties at the hearing, and having

16   found that notice and service of the Motion were proper and adequate,

17   **IT IS HEREBY ORDERED** that:

18   1.    The Motion is granted;

19   2.    Pursuant to 11 U.S.C. §§ 363(b) and (f), the Debtor is authorized to enter

20   into the Agreement for Purchase and Sale of Assets and Termination of Lease for

21   Spoons Grill & Bar - Campbell, CA and First Amendment thereto (collectively, the

22   "Agreement"), which is attached to this Order as Exhibit A and incorporated herein by

23   reference, and the terms and conditions of the Agreement (and related Exhibits) are

24   approved;

25   3.    Pursuant to 11 U.S.C. §§ 363(b) and (f), the Debtor is authorized to sell to

26   Hott Wings, Inc., a California corporation, or its assignee ("Purchaser"), the assets

27

28   [1]    Capitalized terms not otherwise defined in this Order shall have the meaning ascribed to them in the Motion.

1  detailed in the Agreement free and clear of liens, claims and interests on an as-is, where-

2  is basis with any unpaid liens, claims, or interests to attach to the proceeds of the sale

3  subject to all parties' rights and claims to dispute and object to such liens, claims and

4  interests as set forth in the Motion;

5       4.    The Debtor is authorized to take any actions reasonably necessary to

6  effectuate the terms and conditions of the Agreement, including executing any

7  documents contemplated by the Agreement and paying any necessary closing costs, tax

8  payments, and payments to the State Board of Equalization for the transfer of the liquor

9  license up to the amount of the Purchase Price so allocated;

10      5.    Purchaser is a good faith purchaser pursuant to 11 U.S.C. § 363(m);

11      6.    The requirement of a stay pursuant to Federal Rule of Bankruptcy

12 Procedure 6004(g) is waived;

13      7.    The terms of the Settlement Agreement and Release ("Compromise")

14 attached to this Order as Exhibit B, between the Debtor and the Keesling Group, are

15 approved;

16      8.    The Debtor is authorized to enter into the Compromise pursuant to Federal

17 Rule of Bankruptcy Procedure 9019;

18      9.    The Debtor is authorized to execute any and all documents reasonably

19 necessary to effectuate the terms of the Compromise; and

20      10.   The rejection and termination of the lease with Landlord is authorized and

21 approved upon the terms and conditions set forth in the Agreement and Compromise.

22

23 DATED:  8/7/07

THE HONORABLE ERITHE A. SMITH
24                                           United States Bankruptcy Judge

25

26

27

28

#221486v1<FIRM> -ORDER ON SALE-COMPROMISE MOTION - SPOONS CAMPBELL          ORDER

### FIRST AMENDMENT TO AGREEMENT FOR PUCHASE AND SALE OF ASSETES AND TERMINATION OF LEASE (SPOONS GRILL & BAR, CAMPBELL, CA)

THIS FIRST AMENDMENT TO AGREEMENT FOR PUCHASE AND SALE OF ASSETS AND TERMINATION OF LEASE (SPOONS GRILL & BAR, CAMPBELL, CA) (this "Amendment") is entered into as of July 23, 2007, by and between SPOONS RESTAURANTS, INC., a Texas corporation ("Seller") and HOTT WINGS, INC., a California corporation ("Buyer"), with reference to the following:

### RECITALS

A.      Buyer and Seller are parties to that certain Agreement for Purchase and Sale of Assets and Termination of Lease for Spoons Grill & Bar, Campbell, CA, dated as of May 31, 2007 (the "Purchase Agreement"), with respect to the restaurant location commonly known as 1555 S. Bascom Ave., Campbell, CA 95008. The terms of the Purchase Agreement are incorporated herein by this reference and capitalized terms used in this Agreement which are not expressly defined herein shall have the meaning given to them in the Purchase Agreement.

B.      Buyer and Seller now desire to amend the Purchase Agreement in the following particulars only.

NOW, THEREFORE, for fair and valuable consideration, the receipt and adequacy of which is hereby acknowledged, Buyer and Seller agree as follows:

1.      Outside Approval Date. The "Outside Approval Date", as defined in Article I of the Purchase Agreement, is hereby extended from September 30, 2007, to November 30, 2007.

2.      Counterparts; Facsimile Delivery. This Amendment may be executed in several counterparts, and all so executed shall constitute one agreement binding on all parties hereto, notwithstanding that all parties are not signatories to the original or the same counterpart. The parties may also deliver executed copies of this Amendment to each other by facsimile, which facsimile signatures shall be binding.

3.      No Other Modifications. Except as expressly provided herein, the Purchase Agreement shall remain unmodified and in full force and effect.

From:209

07/13/2007 17:17 #089 P.003/003

IN WITNESS WHEREOF, the Buyer and Seller have executed this Amendment as of the date first set forth above.

SPOONS RESTAURANTS, INC., a California corporation

By: _____

Ken Mucha, CBO

"Seller"

HOTT WINGS, INC., a California corporation

By: _____

Its: _V. P. Development_____

"Buyer"

-2-

EXHIBIT A PAGE 5

**AGREEMENT FOR PURCHASE AND SALE OF ASSETS AND TERMINATION OF LEASE**

**FOR**

**SPOONS GRILL & BAR – CAMPBELL, CA**

at

1555 S. Bascom Ave.
Campbell, CA  95008

May **3/**, 2007

1

# AGREEMENT FOR PURCHASE AND SALE OF ASSETS AND TERMINATION OF LEASE

## FOR SPOONS GRILL & BAR – CAMPBELL, CA

THIS AGREEMENT, dated as of the Reference Date, which is described below, is made by and between the Seller and Buyer identified below.

## INTRODUCTION

A.    Seller is the owner and operator of the Spoons Grill & Bar described below.

B.    Buyer desires to (i) obtain from Landlord a new lease for the Premises, and (ii) acquire certain assets used in the operation of the Campbell Spoons from Seller. To accomplish the foregoing, Seller desires to terminate the Existing Lease and sell to Buyer, and Buyer desires to purchase from Seller, the Assets on the terms and conditions of this Agreement.

## AGREEMENT

## ARTICLE I
## BASIC INFORMATION

The following Basic Information identifies the parties to this Agreement and defines certain terms used in this Agreement. If there is any conflict between the Basic Information and provisions contained in the balance of this Agreement, the provisions contained elsewhere will control.

| | |
|---|---|
| **"Buyer"** | **Hott Wings, Inc.,** a California corporation, or its assignee as permitted by Section 8.2 below. |
| **"Campbell Spoons"** | The Spoons Grill & Bar located at 1555 S. Bascom Ave., Campbell, California, 95008. |
| **"Closing Date"** | On or before the <u>later of</u>: (i) five (5) days following the ABC's approval of the transfer of the Liquor License to Buyer (the "ABC Approval"), (ii) eleven (11) days after the Sale Approval Date (as defined in Section 4.1 below), or (iii) five (5) days following the Lease Termination Date and Buyer's approval or deemed approval of the Title Requirement in accordance with Section 4.2 below. Notwithstanding the foregoing, if either the Lease Termination Date and Buyer's approval or deemed approval of the Title Requirement, the Sale Approval Date or the ABC Approval has not occurred by September 30, 2007 (the "Outside Approval Date"), then either Buyer or Seller may, in its sole and absolute discretion, by notice to the other party terminate this Agreement, in which case Buyer shall receive a return of the Deposit and Buyer and Seller shall have no further liability or obligation whatsoever |

2

to each other except for those obligations herein that expressly survive termination. Notwithstanding the foregoing, if the ABC Approval has not been obtained by the Outside Approval Date, Buyer may elect to waive this condition and consummate the Closing within five (5) days following the Outside Approval Date and in such event, (i) Buyer and Seller shall deliver the Closing funds and documents specified herein (and Buyer shall fund the Purchase Price without deduction or offset) and proceed with the Closing, and (ii) Seller shall have a continuing obligation for a period of sixty (60) days after the Closing to execute such documents and instruments and perform such other acts at no expense or liability to Seller as are reasonably required to assist Buyer in obtaining the ABC Approval after the Closing and Seller's obligations under this part shall survive the Closing.

**"Deposit"**      **$25,000.00** deposited with the Escrow Agent simultaneous with execution of this Agreement.

**"Escrow Agent"**      Wilmington Trust Company

**"Existing Lease"**      Collectively those instruments and agreements evidencing Seller's leasehold interest in the Premises.

**"Landlord"**      David Jm. Keesling and Barbara J. Keesling, as Trustees of the Keesling Family Trust dated October 15, 1984; Voytek Family Investment Company, LLC, a California limited liability company; and Elias Tsigaris, collectively as the lessor under the Existing Lease.

**"Lease Termination Date"**      The date upon which (i) Buyer and Landlord (or the current owner of fee title to the Premises if other than Landlord) and the fee title owner of the parking area adjacent to the Premises have executed the New Lease on terms approved by Buyer in its sole and absolute discretion, and (ii) Seller and Landlord have executed the Lease Termination Agreement either in the form of **Exhibit "C"** attached hereto or in such other form and substance approved by Seller in its sole and absolute discretion.

**"Liquor License"**      Type 47, No. 151540 issued by California Alcoholic Beverage Control (the "ABC"), currently issued to Seller, which is to be transferred to Buyer pursuant to the terms set forth in this Agreement.

**"Purchase Price"**      The purchase price for the Assets and Seller's termination of the Existing Lease is the sum of Two Hundred Thousand Dollars (**$200,000.00**), without adjustment.

EXHIBIT A PAGE 8

| | |
|---|---|
| **"Premises"** | That certain real property and improvements currently leased to Seller pursuant to the Existing Lease commonly referred to as 1555 S. Bascom Ave., Campbell, California, 95008. |
| **"Reference Date"** | May 31, 2007 |
| **"Seller"** | **Spoons Restaurant, Inc.,** a Texas corporation |
| Seller's address for notices | Spoons Restaurant, Inc. Attention: Ken Mucha 18500 Von Karman Avenue, Suite 380 Irvine, CA 92612 Fax: (949) 272-4677 Phone: (949) 225-5460 |
| with a copy to: | Weiland, Golden, Smiley, Wang Ekvall & Strok, LLP Attention: Evan D. Smiley 650 Town Center Drive, Suite 950 Costa Mesa, CA 92626 Fax: (714) 966-1002 Phone: (714) 966-1000 |
| Buyer's address for notices: | Hott Wings, Inc. 400 Lyell Avenue, Suite 101 Modesto, CA 95356 Fax: (209) 575-2465 Phone: (209) 522-0500 |
| With a copy to: | Petrulakis Jensen & Friedrich, LLP Attention: Matthew I. Friedrich 1130 12th Street, Suite B Modesto, CA 95354 Fax: (209) 522-0700 Phone: (209) 522-0500 |

Buyer' Initials: _____

Seller's Initials: _____

## ARTICLE II
### ADDITIONAL DEFINITIONS

"**Assets**" means the FF&E and the Liquor License.

"**Bankruptcy Case**" means the chapter 11 bankruptcy case, case number SA 06-11444 ES, filed by Spectrum Restaurant Group, Inc., a Delaware corporation; Grandy's, Inc., a California corporation; Spoons Restaurants, Inc., a Texas corporation; Spectrum Foods, Inc., a California corporation; Crabby Bob's Franchise Corp., a California corporation; Local Favorite, Inc., a California corporation; substantively consolidated reorganized debtors under Case No. SA 03-15911 ES, as the debtor and debtor-in-possession.

"**Bankruptcy Court**" means the United States Bankruptcy Court, Central District of California, Santa Ana Division that is presiding over the Bankruptcy Case.

"**Contract Period**" means the period from the date of this Agreement through the Closing Date.

"**FF&E**" means all of Seller's interest in appliances, apparatus, machinery, fixtures, furnishings, equipment, signs, and other tangible personal property at the Premises listed in **Exhibit A**, subject to potential adjustment as provided in Section 3.5 below.

"**Lease Termination Agreement**" means an agreement between Seller and Landlord terminating the Existing Lease as more particularly provided in Section 4.2 below.

"**New Lease**" means both (i) a new lease agreement for the Premises directly between Buyer and Landlord, and (ii) a new agreement for parking between Buyer and the fee title owner of the parking area located at the office building directly north of the Premises (the "Parking Agreement"), all as more particularly provided in Section 4.2 below.

"**Trademark**" means the Trademark, "Spoons Grill & Bar". Buyer shall have no right to use the Trademark in any aspect of its operations.

## ARTICLE III
### PURCHASE AND SALE OF ASSETS; TERMINATION OF EXISTING LEASE

Section 3.1    Purchase and Sale of Assets.  Seller agrees to sell the Assets to Buyer and to terminate the Lease, and Buyer agrees to purchase the Assets from Seller and to compensate Seller for terminating the Lease, upon the terms, covenants, and conditions set forth in this Agreement. This transaction does not include the transfer of any intellectual property rights of Seller, including, without limitation, the Trademark or the right to use same or any other trade names and trademarks of Seller, proprietary marks, logos, recipes, or operating methods, and any signage, menus or other materials utilizing or containing any of the foregoing items; Buyer understands that all such intellectual property rights shall remain the property of Seller and shall not be sold or assigned to, or otherwise acquired by, Buyer.

Section 3.2    Purchase Price.  The Purchase Price for the Assets and Seller's agreement to terminate the Existing Lease is the amount set forth in the Basic Information, and is payable by Buyer to

5

EXHIBIT A PAGE 10

Seller by wire transfer of immediately available funds on the Closing Date, through the procedure set forth in Article VII of this Agreement.

Section 3.3 <u>Deposit</u>. Concurrently with execution of this Agreement, Buyer shall deposit with the Escrow Agent the Deposit in cash, by wire transfer or cashier's check. At the Closing, the Deposit (and any interest accrued thereon) shall be credited and applied toward payment of the Purchase Price. If the transactions herein contemplated do not close, the Deposit (and any interest accrued thereon) will be refunded to Buyer or forfeited by Buyer and paid to Seller as set forth in Article VI of this Agreement.

Section 3.4 <u>Purchase Price Allocation</u>. The purchase price is allocable among the Assets and termination of the Existing Lease as follows:

> (i) Liquor License - $30,000
> (ii) FF&E - $50,000
> (iii) Lease Termination - $120,000

Buyer and Seller shall report and file all tax returns (including any amended tax returns and claims for refund) consistent with such mutually agreed Purchase Price allocation, and shall take no position contrary thereto or inconsistent therewith (including in any audits or examinations by any taxing authority or any other proceedings). Buyer and Seller shall file or cause to be filed any and all forms (including U.S. Internal Revenue Service Form 8594), statements and schedules with respect to such allocation, including any required amendments to such forms. Notwithstanding the foregoing, if the ABC requires that a certain minimum amount of the Purchase Price be allocated to the Liquor License which is greater than the amount specified above, Buyer and Seller shall accept such amount as being allocated to the Liquor License, shall reallocate the remainder of the Purchase Price between the remaining asset categories in the same proportions as the above allocation, and shall report this amount accordingly on their respective tax returns without objection, with the remainder of the Purchase Price being allocated in accordance with the above provisions. The provisions of this Section 3.4 shall survive the Closing.

Section 3.5 <u>Instruments of Conveyance</u>. On the Closing Date, Seller will convey title to the FF&E to Buyer, free and clear of any and all liens and encumbrances, by bill of sale in substantially the form of **Exhibit B** attached hereto (the "**Bill of Sale**"). All tangible property is sold in "**AS-IS, WHERE-IS**" condition and without any representation or warranty, implied or express, including but not limited to any implied warranty of merchantability and fitness for any particular purpose. Buyer acknowledges that **Exhibit A** attached hereto represents a standard schedule of the FF&E which may be located in the Premises, that the FF&E is subject to nonmaterial change prior to closing in the normal course of the operation of the Campbell Spoons in accordance with historic operations, and that the Purchase Price shall not be adjusted notwithstanding any such fluctuations occurring during the Contract Period.

## ARTICLE IV
## CONDITIONS PRECEDENT

Section 4.1 <u>Bankruptcy Court Approval</u>. Within twenty (20) days following the execution of this Agreement, Seller will, at its own expense, file a motion for an order (the "**Approval Order**") from the Bankruptcy Court which (i) approves the sale of the FF&E and the transfer of the Liquor License to Buyer on the terms and conditions set forth in this Agreement and authorizes the Seller to

6

proceed with these transactions, (ii) approves the termination of the Existing Lease upon the terms contained in the Lease Termination Agreement, (iii) extends the deadline for Seller to assume or reject the Existing Lease under 11 U.S.C. Section 365 to the Outside Approval Date, (iv) includes a finding that Buyer is a good faith purchaser of the Assets, and (v) states that the sale of the FF&E and transfer of the Liquor License to Buyer shall be free and clear of all liens and encumbrances. Following the filing of the Sale Motion, Buyer and Seller shall use commercially reasonable efforts to obtain the Approval Order. Both Buyer's and Seller's obligations to consummate the transactions herein contemplated shall be conditioned upon the Bankruptcy Court's entry of the Approval Order. If the Bankruptcy Court refuses to issue the Approval Order, then the transactions herein contemplated shall automatically terminate and Seller and Buyer shall be relieved of any further liability or obligation hereunder. Upon entry of the Approval Order in accordance with the provisions of this Section 4.1 (the date of such entry being referred to as the "**Sale Approval Date**"), the condition set forth in this Section 4.1 shall conclusively be deemed satisfied. This transaction may be subject to overbids in the Bankruptcy Court and in the event of a successful overbid this Agreement shall terminate, Buyer shall be entitled to a return of the Deposit, and Buyer and Seller shall have no further obligation to each other except for those obligations herein which expressly survive termination.

Section 4.2    Termination of Existing Lease; Negotiation of New Lease.    Buyer shall have until the Outside Lease Termination Date to negotiate with Landlord in good faith for the New Lease (which includes both a lease for the Premises and the Parking Agreement) upon terms acceptable to Buyer in its sole and absolute discretion. Seller shall not be a party to, or have any obligations or liability under, the New Lease. Buyer shall keep Seller advised regarding Buyer's progress in this regard, including meeting with Seller at Seller's request and making full disclosure to Seller of all information related to such negotiations to the extent reasonably necessary to assist Seller in obtaining either the Lease Termination Agreement or the entry of the Approval Order. Buyer shall notify Seller in writing immediately upon procurement of the New Lease (meaning the date upon which such agreement(s) has/have been fully executed). If Buyer makes a good faith determination that it will not be able to obtain the New Lease on terms acceptable to Buyer prior to the Outside Approval Date, Buyer shall promptly advise Seller in writing of such circumstance and either Buyer or Seller may then elect to terminate this Agreement by written notice to the other as if the Outside Approval Date has occurred with a New Lease having been obtained. Further, if Seller determines prior to the Outside Approval Date that it will not be able to obtain the Lease Termination Agreement upon terms acceptable to Seller, Seller will have the right to notify Buyer in writing of such circumstance and to terminate this Agreement, in which case Buyer shall be entitled to a return of the Deposit and Seller shall have no further liability to Buyer.

Buyer shall be permitted to obtain through Chicago Title Company or such other title company selected by Buyer at Buyer's expense title insurance coverage insuring the priority of the New Lease subject only to such exceptions as are acceptable to Buyer in its sole and absolute discretion (the "Title Requirement"). Notwithstanding the foregoing, Buyer must waive the Title Requirement, or object thereto, within five(5) business days following procurement of the New Lease. If Buyer fails to deliver written notice to Seller stating that the Title Requirement has not been satisfied within the prescribed time frame, then the Title Requirement shall for all purposes be deemed to have been satisfied and waived and shall no longer be a condition precedent hereunder.

In conjunction with Buyer's efforts to negotiate the New Lease, Seller and Landlord shall attempt to reach agreement regarding the terms upon which the Existing Lease will be terminated effective as of the Closing (the "Lease Termination Agreement"). The initial form of the Lease Termination Agreement that Seller will present to Landlord will be substantially in the form of **Exhibit**

7

"**C**" attached hereto (subject to establishment of the Final Payment as defined therein in an amount acceptable to Seller in its sole and absolute discretion, completion of Schedule 1 attached thereto, and accurate referencing of party names). Seller confirms it is Seller's intention that the Final Payment will be not less than the amount of unpaid real property taxes related to the Premises which are Seller's contractual responsibility under the Existing Lease, less any amounts previously received by the applicable taxing authority which have not yet been applied to such tax obligation. Subject to the exceptions noted above (i.e., completion of names, schedules and the Final Payment), the attached form of the Lease Termination Agreement is hereby approved by Seller, and any and all modifications thereto must be acceptable to Seller in its sole and absolute discretion. In all cases the Lease Termination Agreement must release Seller from all obligations and liabilities under the Lease from and after the Closing.

The procedures for the execution, delivery and effectiveness of both the New Lease and the Lease Termination Agreement shall be determined and approved by Buyer and Seller as part of each party's approval of their respective arrangement with Landlord, provided, however, that in all cases both the New Lease and the Lease Termination Agreement shall provide that they are effective concurrent with, and only upon, the Closing. If either the New Lease or the Lease Termination Agreement is not obtained by the Outside Lease Termination Date on terms acceptable to the applicable party in its sole and absolute discretion (provided that Seller shall be obligated to execute the Lease Termination Agreement in the form attached hereto subject only to Seller's approval of the exact amount of the Final Payment as defined therein), then said party shall be permitted to terminate this Agreement based upon a failure of a condition precedent, Buyer shall be entitled to the return of the Deposit, and Buyer and Seller shall have no further obligation to each other except for those obligations herein which expressly survive termination.

Section 4.3    Buyer's Conditions. Notwithstanding anything in this Agreement to the contrary, Buyer's obligation to make the deliveries required of Buyer at the Closing, and to otherwise close the transactions herein contemplated, shall be subject to the satisfaction or waiver of the following conditions which are for Buyer's benefit:

(a)    The Bankruptcy Court shall have entered the Approval Order in accordance with Section 4.1 of this Agreement and the Approval Order shall not have been stayed as of the Closing Date;

(b)    All of the representations and warranties of Seller contained in this Agreement shall continue to be true and correct at the Closing in all material respects;

(c)    The ABC shall have approved the transfer of the Liquor License to Buyer (provided that Buyer's ability to assert a failure of this condition shall be limited by the provisions of Section 5.4(b) below);

(d)    The Lease Termination Date shall have occurred;

(e)    The Title Requirement shall have been satisfied (or deemed satisfied) or waived by Buyer in the manner and within the timeframe prescribed in Section 4.2 above.

(f)    Seller shall have delivered, or shall be prepared to deliver to Buyer at the Closing, all documents required of Seller to be delivered at the Closing; and

(g)    Seller shall have substantially performed or tendered performance of each and every material covenant on Seller's part to be performed which, by its terms, is required to be performed at or before the Closing.

(h)    Seller shall have delivered to Escrow Agent such additional evidence of corporate authority as Escrow Agent may require to the extent not already addressed in the Approval Order.

Section 4.4    Seller's Conditions. Notwithstanding anything in this Agreement to the contrary, Seller's obligation to sell the Assets, to transfer the Liquor License, and to terminate the Existing Lease, will be subject to the satisfaction or waiver of the following conditions which are for Seller's benefit:

(a)    The Bankruptcy Court shall have entered the Approval Order in accordance with Section 4.1 of this Agreement and the Approval Order shall not have been stayed as of the Closing Date;

(b)    All of the representations and warranties of Buyer contained herein shall continue to be true and correct at the Closing in all material respects;

(c)    The Lease Termination Date shall have occurred;

(d)    Buyer shall have delivered, or shall be prepared to deliver to Seller at the Closing, all cash and documents required of Buyer to be delivered at the Closing;

(e)    Buyer shall have substantially performed or tendered performance of each and every material covenant on Buyer's part to be performed which, by its terms, is required to be performed at or before the Closing; and

(f)    Buyer shall have delivered to Seller appropriate evidence of all necessary corporate action by Buyer in connection with the transactions herein contemplated, including: (i) certified copies of resolutions duly adopted by Buyer's directors approving the transactions herein contemplated and authorizing the execution, delivery, and performance by Buyer of this Agreement; (ii) a certificate as to the incumbency of officers of Buyer executing this Agreement and any instrument or other document delivered in connection with the transactions herein contemplated; and (iii) such other documents and information as may be required by the Court in connection with the Approval Order.

9

EXHIBIT A PAGE 14

Section 4.5    <u>Failure or Waiver of Conditions</u>. If any of the above conditions is neither satisfied nor waived on or before the date by which the condition is required to be satisfied, and any applicable cure period has expired, then any party benefited by such condition and who is not then in default under this Agreement may terminate this Agreement by delivering to the other written notice of termination. Any waiver of a condition shall be effective only if such waiver is stated in writing and signed by the waiving party; provided, however, that the consent of a party to the Closing shall constitute a waiver by such party of any conditions to Closing not satisfied as of the Closing Date. In the event of a termination due to a failure of a Buyer condition set forth in Section 4.3, the Deposit shall be returned to Buyer along with all interest earned thereon while held in Escrow, except in the case of a failure of condition due to Buyer's default, in which event the provisions of Article VI shall instead apply. Termination of this Agreement due to the failure of a condition shall not constitute a waiver of any default under this Agreement.

## ARTICLE V
## REPRESENTATIONS, WARRANTIES, AND COVENANTS

Section 5.1    <u>Seller's Representations and Warranties</u>. In addition to any other representations or warranties expressly contained elsewhere in this Agreement, Seller represents and warrants to Buyer that subject to the applicable provisions of bankruptcy law and upon obtaining the Approval Order and the approval of the ABC to the transfer of the Liquor License, the execution, delivery and performance of this Agreement and all writings relating hereto by Seller have been duly and validly authorized and the execution and delivery of this Agreement, the consummation of the transactions herein contemplated, and the performance of, fulfillment of and compliance with the terms and conditions hereof by Seller do not and will not: (i) conflict with or result in a breach of the articles of incorporation or by-laws of Seller; (ii) violate any statute, law, rule or regulation, or any order, writ, injunction or decree of any court or governmental authority; or (iii) violate or conflict with or constitute a default under any agreement, instrument or writing of any nature to which Seller is a party or by which Seller or its assets or properties may be bound. If, during the term of this Escrow, Seller receives actual knowledge of a circumstance which would cause any of the representations and warranties contained in this Section 5.1 to be materially inaccurate if made as of that date, Seller will advise Buyer in writing. Buyer will then have the right, as its sole recourse and remedy resulting from such inaccuracy, to terminate this Agreement and obtain a return of its Deposit. Buyer shall make such election to terminate, if at all, in writing within ten (10) days from receipt of such written notice from Seller. If Buyer fails to elect to terminate this Agreement in writing within said ten (10) day period, then (i) Buyer shall conclusively be deemed to have approved of (and waived objection to) such inaccuracy and Buyer shall accept the Assets at the Closing subject to such matters, (ii) such matter shall not be deemed a failure of condition pursuant to Section 4.3(b), and (iii) Seller shall have no further liability or obligation to Buyer as a result of such matters. In no event shall any individual either executing this Agreement on behalf of Seller or otherwise employed by Seller have any personal liability or recourse for any breach of any representation or warranty or other provision of this Agreement by Seller. Seller's representations and warranties contained in this Agreement and in any document executed by Seller pursuant to this Agreement end one (1) year following the Closing Date (the **"Limitation Period"**)

Section 5.2    <u>Seller's Covenants</u>.

(a)    During the Contract Period Seller shall use commercially reasonable good faith efforts at no material expense or liability to Seller to assist Buyer in transferring the Liquor

10

EXHIBIT A PAGE 15

License to Buyer, including executing such documents and instruments as are reasonably required by Escrow Agent or the ABC to facilitate the Closing. Seller, however, is not obligated to commence, participate in or defend any litigation or other legal or quasi-legal proceeding in providing such assistance.

(b)     Subject to Buyer's obligations in Section 5.4(c) below and the provisions of this paragraph, and as an accommodation to Buyer (and not as a condition precedent hereunder), Seller shall allow Buyer the right to enter upon the Premises for the first thirty (30) days of the Contract Period (the "Entry Period") for the purpose of allowing Buyer to make such inspections and investigations of the Premises as Buyer may reasonably determine to be appropriate. Buyer shall (i) conduct all studies in a safe manner and not allow any dangerous or hazardous conditions created by Buyer or its agents, consultants or contractors to occur on the Premises during such investigation (and Buyer shall immediately cure any such conditions should they occur); (ii) comply with all applicable laws and governmental regulations; (iii) keep the Premises free and clear of all materialmen's liens, lis pendens and other liens arising out of the entry and work performed under this paragraph; (iv) provide Seller with at least 48 hours advance written notice of its intention to enter the Premises, and Seller or its representatives shall have the right to be present during any such inspections, (v) provide to Seller prior to initial entry a certificate of insurance evidencing that Buyer has procured and paid premiums for a comprehensive general liability insurance policy written on a per occurrence and not claims made basis in a combined single limit of not less than THREE MILLION DOLLARS ($3,000,000.00), which insurance names Seller as an additional insured; (vi) repair any damage to the Premises caused by Buyer's (or its employees', consultants', contractors', agents' or representatives') entry, (vii) not interfere with the restaurant operations, (viii) not undertake or permit any actions, conditions or circumstances that are in violation of the Existing Lease, and (ix) not undertake any destructive or invasive testing upon the Premises without Seller's prior written consent, which may be withheld in Seller's sole discretion.

(c)     During the Entry Period, as defined in Section 5.2(b) above, Buyer shall have the right, upon prior written notice to Seller, to review at Seller's offices such third party non-privileged reports related to the physical condition of the Premises as Seller may have in its actual physical possession (collectively, "Seller's Documents"). Buyer shall provide Seller with reasonable prior notice of its election to review Seller's Documents. Seller's Documents shall exclude any information which may be in the possession of a third party and which is not also in Seller's actual physical possession. Seller makes no representation or warranty regarding the accuracy or completeness of any information contained in Seller's Documents, all such information being made available on an "AS-IS" basis. If this Agreement is terminated for any reason, Buyer shall, within five (5) days following such termination, return to Seller all information, surveys, studies, documents, reports and data obtained by Buyer hereunder, and Buyer shall thereafter keep and hold all such information respecting the Property in strict confidence (and Buyer's obligation to keep all such information confidential shall survive such termination). Buyer acknowledges that Seller is making such information available as an accommodation only, and that Buyer must obtain any desired assurances, representation and warranties with respect to the Premises directly from Landlord as part of the New Lease.

(d)     During the Contract Period Seller will pay rent and perform its other obligations under the Existing Lease so as not to create a default under the Existing Lease with respect to those obligations accruing during the Contract Period (but Buyer understands that there are amounts owing under the Existing Lease related to the period prior to the Contract Period which

11

will be paid by Seller at the Closing by delivery to Landlord of the Final Payment in an amount acceptable to Seller subject to the conditions specified in Section 4.2 above).

Section 5.3    Buyer's Representations and Warranties. In addition to any other representations or warranties contained elsewhere in this Agreement, Buyer represents and warrants to Seller as follows:

(a)    Buyer is a corporation duly organized, validly existing and in good standing under the laws of the State of California. Buyer has all requisite entity power and authority to own, lease and operate its properties, to carry on its business as now being conducted and to execute, deliver and perform this Agreement and all writings relating hereto;

(b)    The execution, delivery and performance of this Agreement and all writings relating hereto by Buyer have been duly and validly authorized. The execution and delivery of this Agreement, the consummation of the transactions herein contemplated, and the performance of, fulfillment of and compliance with the terms and conditions hereof by Buyer do not and will not: (i) conflict with or result in a breach of the articles of incorporation or by-laws of Buyer; (ii) violate any statute, law, rule or regulation, or any order, writ, injunction or decree of any court or governmental authority; or (iii) violate or conflict with or constitute a default under any agreement, instrument or writing of any nature to which Buyer is a party or by which Buyer or its assets or properties may be bound; and

(c)    Buyer has the financial ability to perform this Agreement.

Section 5.4    Buyer's Covenants. Buyer covenants as follows:

(a)    During the Contract Period, Buyer shall provide financial statements as may be requested by the Court in connection with the Approval Order;

(b)    During the Contract Period Buyer shall use good faith best efforts to obtain transfer of the Liquor License as soon as possible. All ordinary and reasonable administrative charges, costs and fees associated with such transfer shall be paid by Buyer. Buyer shall keep Seller informed as to Buyer's efforts, including providing Seller with copies of any documents, applications and other information related thereto promptly upon request, and Buyer shall notify Seller in writing immediately upon the ABC's approval of the transfer.

(c)    Buyer hereby agrees to indemnify, defend and hold Seller and its shareholders, employees, officers, directors, agents, contractors, consultants, representatives, heirs, successors and assigns free and harmless from and against any and all losses, damages, liens, liabilities, claims and causes of action which any such party may suffer or incur as a consequence of Buyer's (or its employees', consultants', contractors', assignees', nominees', agents' or representatives') entry upon the Premises, or actions with respect to the Premises or the Assets prior to the Closing. Should Buyer desire to enter the Premises during the Contract Period (other than mere non-interfering entry as a member of the public during hours of operation), any such entry shall be governed by the provisions of Section 5.2(b) above. This provision shall survive termination of this Agreement or Close of Escrow.

Section 5.5    "AS-IS" Transaction. Buyer acknowledges that it has been evaluating and investigating the Assets well in advance of the execution of this Agreement. Based upon Buyer's due

12

diligence efforts prior to the Reference Date, Buyer acknowledges and agrees that upon execution of this Agreement Buyer shall be deemed to have inspected and approved of the Assets and the condition thereof. Buyer hereby acknowledges and agrees that Seller makes no representations or warranties whatsoever, express or implied, with respect to any matter relating to the Assets, the condition thereof, or the merchantability or suitability thereof for Buyer's intended use. Buyer further acknowledges that Buyer has conducted an independent inspection and investigation of the Assets and accepts same at the Closing in their "AS IS," "WHERE IS" condition, "WITH ALL FAULTS." In addition, Buyer acknowledges and confirms that Seller has not made, and is not making, any representations or warranties with respect to the Premises or any other matters related thereto and that this transaction does not involve the conveyance of any interest in the Premises or in any other real property or improvements. Buyer covenants and confirms that since Seller is not conveying any leasehold or other interest in the Premises to Buyer, and that Buyer is acquiring such interest directly from Landlord pursuant to a separate arrangement directly between Landlord and Buyer, (i) Buyer is not requesting or relying upon any representations, assurances or warranties with respect thereto from Seller, (iii) Buyer shall obtain any required representations, rights of inspection and other assurances with respect to the Premises and other matters related thereto, including the condition of all associated improvements, directly from Landlord as part of, and in connection with, Buyer's negotiation and procurement of the New Lease, and (iii) Buyer shall not look to, and hereby forever releases Seller from and with respect to, all matters, conditions and circumstances related to the Premises, including, without limitation, the physical condition thereof (provided that the foregoing shall not constitute a release of any of Seller's express obligations under this Agreement or from claims related to fraud).

### ARTICLE VI
### DEPOSIT; LIQUIDATED DAMAGES

Buyer has deposited with the Escrow Agent on the date of this Agreement the Deposit in the amount of the Deposit identified in the Basic Information. The Deposit is and shall be considered for all purposes immediately non-refundable upon delivery by Buyer except in the case of either (i) a material and uncured default of this Agreement by Seller, (ii) a failure of a closing condition described in Section 4.3 above or elsewhere in this Agreement for Buyer's benefit (so long as such failure of condition was not caused by Buyer's default of an express obligation hereunder) or (iii) any other provision of this Agreement which expressly provides for a return of the Deposit to Buyer. If Buyer is entitled to a refund of the Deposit pursuant to the terms of this Agreement, Seller shall, within three (3) business days following written request from Buyer deliver to Escrow Agent written instruction to release the Deposit to Buyer. If the transactions herein contemplated are terminated by reason of Buyer's default of any obligation hereunder (a "**Buyer Default Termination**"), Seller shall be entitled to the release from Escrow Agent of the Deposit as its liquidated damages and as its sole and exclusive remedy as provided in the next succeeding paragraph. In the event Seller is entitled to a release of the Deposit by reason of a Buyer Default Termination, Escrow Agent shall immediately disburse the Deposit and all interest accrued thereon to Seller to be retained by Seller for its own account. The provisions of this Article VI shall survive the Closing or any termination of this Agreement.

**BUYER AND SELLER HEREBY ACKNOWLEDGE AND AGREE THAT SELLER'S DAMAGES IN THE EVENT OF SUCH A BREACH OF THIS AGREEMENT BY BUYER WOULD BE DIFFICULT OR IMPOSSIBLE TO DETERMINE, THAT THE AMOUNT OF THE DEPOSIT PLUS ACCRUED INTEREST IS THE PARTIES' BEST AND MOST ACCURATE ESTIMATE OF THE DAMAGES SELLER WOULD SUFFER IN THE EVENT THE TRANSACTIONS HEREIN CONTEMPLATED FAIL TO CLOSE, AND THAT SUCH ESTIMATE IS REASONABLE UNDER THE CIRCUMSTANCES EXISTING ON THE DATE**

13

OF THIS AGREEMENT. BUYER AND SELLER AGREE THAT SELLER'S RIGHT TO RETAIN THE DEPOSIT PLUS ACCRUED INTEREST WILL BE THE SOLE REMEDY OF SELLER AT LAW AND IN EQUITY IN THE EVENT OF A BREACH OF THIS AGREEMENT BY BUYER. NOTWITHSTANDING THE FOREGING, THE LIMITATIONS UPON SELLER'S REMEDIES SET FORTH HEREIN SHALL NOT APPLY TO OR OTHERWISE LIMIT ANY RECOVERY BY SELLER (I) UNDER ANY INDEMNITIES MADE BY BUYER IN THIS AGREEMENT, (II) OF ANY ATTORNEYS' FEES OR COSTS RECOVERABLE BY SELLER HEREUNDER, AND/OR (III) FOR ANY BREACH OR FAILURE OF PERORMANCE BY BUYER UNDER ANY POST-CLOSING OBLIGATIONS HEREUNDER OR UNDER ANY CLOSING DOCUMENTS EXECUTED PURSUANT HERETO. THE PAYMENT AND RETENTION OF SUCH AMOUNT AS LIQUIDATED DAMAGES IS NOT INTENDED AS A FORFEITURE OR PENALTY WITHIN THE MEANING OF CALIFORNIA CIVIL CODE SECTIONS 3275 OR 3369, BUT IS INTENDED TO CONSTITUTE LIQUIDATED DAMAGES TO SELLER PURSUANT TO CALIFORNIA CIVIL CODE SECTIONS 1671. SELLER HEREBY WAIVES THE PROVISIONS OF CALIFORNIA CIVIL CODE SECTION 3389. SELLER EXPRESSLY WAIVES THE RIGHT TO SPECIFICALLY ENFORCE THIS AGREEMENT, INCLUDING A WAVIER OF THE BENEFITS OF CALIFORNIA CIVIL CODE SECTION 3389.

ACCEPTED AND AGREED TO:

_____         _____
Seller                                      Buyer

## ARTICLE VII
## CLOSING

Section 7.1    Closing Procedure.

(a)    The closing (the **"Closing"**) of the purchase and sale of the Assets and all other transactions contemplated herein will take place at the offices of Seller or at another location mutually agreeable to Buyer and Seller (provided that all funds shall be handled by Escrow Agent) on the date upon which the conditions precedent set forth in Article IV of this Agreement are timely met or waived, provided that the closing will take place no later than the Closing Date.

(b)    At the Closing, Seller will execute and deliver to Buyer the Bill of Sale and a copy of the duly executed Lease Termination Agreement.

(c)    At the Closing, Buyer will deliver to Seller in immediately available funds through Escrow Agent the balance of the Purchase Price (**"Seller's Funds"**), plus sufficient additional cash to pay Buyer's share of all prorations and closing expenses.

Section 7.2    Closing Adjustments. Representatives of Buyer and Seller will perform an accounting as of 12:01 a.m. on the Closing Date to prepare a listing of the FF&E that will be conveyed at the Closing. The list of the FF&E will be added as Schedule 1 to the Bill of Sale.    The provisions of this Section 7.2 may not specify all adjustments properly to be made in a transaction of this nature. Representatives of Buyer and Seller will perform all of the adjustments, including any not specifically referred to herein, which are appropriate and usual. The adjustments will be calculated or paid in an amount based upon a fair and reasonable estimated accounting performed and agreed to by representatives of Seller and Buyer at the Closing.

14

Section 7.3    Closing Costs.  Buyer and Seller shall share equally all escrow charges incurred with Escrow Agent.  Buyer shall pay any and all governmental documentary transfer fee, any and all sale, purchase, transfer, documentary, stamp, use or similar taxes due on the transfer of the Assets from Seller to Buyer (including any transfer fee applicable for Liquor License), and any and all recording and closing costs for the transactions herein contemplated.  Each party shall be responsible for its own attorneys fees and costs incurred in connection with this transaction, including those costs incurred in the Bankruptcy Court in connection with the Bankruptcy Case.

Section 7.4    Termination of Operations.  As of the Closing, Seller will have terminated its business operations and vacated the Premises and shall leave the Premises in broom clean condition (without removal of the Assets) and subject to Seller's performance of its express obligations hereunder, Seller shall have no obligations whatsoever to Buyer following the Closing with respect thereto.

### ARTICLE VIII
### MISCELLANEOUS

Section 8.1    Brokerage Commissions and Finder's Fees.  Buyer and Seller each represent and warrant to the other party that neither party has retained any broker or finder with respect to this transaction and no third party is entitled to a broker's commission and/or finder's fee. Buyer and Seller agree to indemnify and hold the other harmless from and against all liabilities, costs, damages and expenses, including, without limitation, attorneys' fees, resulting from any claims or fees or commissions, based upon agreements by it, if any, to pay a broker's commission and/or finder's fee. No broker or finder shall be considered a third-party beneficiary of this Agreement.

Section 8.2    Successors and Assigns.  Except as provided below, Buyer may not assign any of Buyer's rights or duties under this Agreement without the prior written consent of Seller, as determined by Seller in its sole and absolute discretion.  Notwithstanding the foregoing, Buyer may assign this Agreement to an entity owned or controlled by Buyer or one or more of Buyer's shareholders provided (i) Buyer shall not be released from its obligations hereunder, and (ii) neither the Court nor the ABC disapproves of such assignee so as to prevent entry of the Approval Order or the ABC's approval of the transfer of the Liquor License.  Any permitted assignment will not relieve Buyer of its obligations under this Agreement.  This Agreement will inure to the benefit of and be binding upon the parties to this Agreement, their heirs and representatives, and their permitted successors and assigns.

Section 8.3    Notices.  All notices required or permitted under this Agreement will be in writing and will be personally delivered, sent by certified mail with return-receipt requested, or sent by other means which affords the sender evidence of delivery, attempted delivery, or rejected delivery, to the respective parties at the street addresses set forth in the Basic Information or evidence of delivery at the fax numbers set forth in the Basic Information, unless and until a different street address or fax number is designated by notice to the other party.  Any notice by means which affords the sender evidence of delivery, attempted delivery, or rejected delivery will be deemed to have been given and received at the date and time of receipt, attempted delivery, or rejected delivery; provided, however, any notice by fax must have evidence of delivery.

Section 8.4    Time.  Time is of the essence of every provision contained in this Agreement.

15


EXHIBIT A PAGE 20

Section 8.5    Incorporation by Reference; Entire Agreement. All of the exhibits referred to are incorporated in and made a part of this Agreement. This Agreement contains the entire understanding of the parties and supersedes all other written or oral understandings.

Section 8.6    Modification. This Agreement may be modified, amended or supplemented only by a written instrument duly executed by all the parties hereto.

Section 8.7    Attorneys' Fees. In the event any dispute between Buyer and Seller regarding the interpretation or enforcement of this Agreement should result in litigation, the prevailing party will be reimbursed for all reasonable costs incurred in connection with such litigation, including reasonable attorneys' fees and costs of appeal, if any.

Section 8.8    Payment of Fees and Expenses. Each party to this Agreement shall be responsible for, and shall pay, all of its own fees and expenses, including those of its counsel, incurred in the negotiation, preparation and consummation of the Agreement and the transactions herein contemplated.

Section 8.9    Construction. The parties acknowledge that each party and its counsel have reviewed this Agreement and agree that the normal rule of construction to the effect that any ambiguities are to be resolved against the drafting party will not be employed in the interpretation of this Agreement. Captions or titles contained in this Agreement are inserted only as a matter of convenience and for reference only, and in no way limit, define, or extend the provisions of this Agreement.

Section 8.10    Governing Law. This Agreement will be construed and interpreted in accordance with, and will be governed and enforced in all respects according to, the laws of the state where the Premises is located.

Section 8.11    Jurisdiction. If any controversy or dispute arises in connection with this Agreement or the transactions herein contemplated, then the Bankruptcy Court will have exclusive personal and subject matter jurisdiction and be the exclusive venue to resolve any such issues, and Buyer and Seller hereby consent and submit to such jurisdiction. Notwithstanding the foregoing, if the Bankruptcy Court for any reason declines to accept or exercise such jurisdiction or if the Bankruptcy Case is closed, then the courts of the State of California will have exclusive personal and subject matter jurisdiction.

Section 8.12    Waiver. No waiver of any of the provisions of this Agreement shall be deemed, or shall constitute, a waiver of other provisions, whether or not similar, nor shall any waiver constitute a continuing waiver. No waiver shall be binding unless executed in writing by the party making the waiver.

Section 8.13    Plain Meaning. Unless defined otherwise, the words used in this Agreement will be construed according to their plain meaning in the English language. The word **will** is used as a command. The word **including** is used in a nonexclusive sense.

Section 8.14    No Other Beneficiaries. Buyer and Seller acknowledge that this Agreement is solely for their own benefit, and, subject to Section 8.3, that of their successors and assigns.

Section 8.15    Counterparts. This Agreement may be executed in one or more counterparts. All counterparts so executed will constitute one contract, binding on all parties, even though all parties are not signatories to the same counterpart.

EXHIBIT A PAGE 21

Section 8.16  <u>Severability.</u>  Nothing in this Agreement will be construed as requiring the commission of any act contrary to law.  If there is any conflict between any provision of this Agreement and any present or future law, such provision will be limited only to the extent necessary to bring it within the requirement of the law.  If any part of this Agreement is held to be indefinite, invalid, or otherwise unenforceable, the balance of this Agreement will continue in full force and effect.

Section 8.17  <u>Further Assurances.</u>  The parties hereto agree to execute and deliver such documents, and to take such other actions, as may be necessary to carry out the intent and purposes of this Agreement.

Section 8.18  <u>Good Faith.</u>  All parties hereto agree to do all acts and execute all documents required to carry out the terms of this Agreement and to act in good faith with respect to the terms and conditions contained herein before and after Closing.

Buyer and Seller have executed this Agreement as of the Reference Date contained in the Basic Information above.

SELLER:

**SPOONS RESTAURANT, INC.**, a Texas corporation

By: _____
    Ken Mucha
    Chief Executive Officer

BUYER:

**HOTT WINGS, INC.**, a California corporation

By: _____
Its: _____

By: _____
    Its: _____

17

EXHIBIT A  PAGE 22

## EXHIBIT A

### TO

### AGREEMENT FOR PURCHASE AND SALE

### OF SPOONS RESTAURANT

### FF & E WORKSHEET

EXHIBIT A PAGE 23

# Spoons Campbell

Asset Inventory

5-8-07

Office

- 1       Sulivan Copier
- 1       3x1 File Cabinet
- 1       Safe 3ftx3ftx3ft
- 1       Drop Safe
- 2       2x1 File Cabinet
- 1 Lot   Desks
- 1       Computer Server
- 1 Lot   Shelving
- 4       Direct TV Boxes

Prep Area

- 1       3 Door Traulsen Standup Freezer
- 1       Berkel Slicer
- 1 Lot   Prep Tables Stainless Steel
- 3       Sinks
- 1       Southland Oven
- 2       Pot Boilers w/stand
- 2       Bread Racks
- 1       3 Bin Sink
- 1 Lot   Stainless steel shelving
- 1       Hood



EXHIBIT A PAGE 24

- 1      Utility 1 Door freezer
- 1      Ecolab Hi-temp dish washer
- 1      Dish area table w/ stand and glass racks

Walk-In Coolers/Freezers

- 1 Lot   Shelving
- 1 Lot   Metal stands
- 2      Roller rack stands

Dry Storage

- 1 Lot   Shelving
- 1      Soda Rack
- 1      Soda dispenser pumps for CO2 system


Kitchen Line

- 1      Delfiled 3x3ft 3 Door cooler
- 1      Silver King Lettuce Crisper
- 3      3x3 Flat Grills
- 1      4x3 BBQ Grill
- 2      Salamander toasters
- 1      Delfiled 3x3ft 1 Door Cooler
- 1      APW 2 Drawer Bread Warmer
- 6      Slide Drawer cooler 1ftx3ft
- 3      FryMaster fryers 3ft long
- 1      2x3 Rang with oven
- 1      Hood 12ft Long
- 1      Panasonic Microwave
- 1      2x2 Slide Drawer cooler 1ftx3ft

- 1 Lot   Line Food Heaters
- 1        Nitro Sauce warmer
- 1 Lot   Knifes
- 1 Lot   Metal Containers
- 1 Lot   Plastic Containers
- 1 Lot   Metal Buckets·
- 1 Lot   Plastic Buckets
- 1 Lot   Stainless Steel table tops

Expo

- 1 Lot   Plastic Mugs
- 2        Soda Dispensers
- 1        Lemonade Dispenser
- 1        Bloomfield Coffee maker
- 1        Superior Coffee Grinder
- 1        Paradise Ice Tea Machine
- 1        Sink w/ faucet
- 1 Lot   Stainless Steel table tops
- 1 Lot   Shelving
- 1        Toastmaster Tortilla warmer
- 1        Delfiled 2 Door chiller
- 1        2 Drawer Toastmaster Bread warmer
- 1        Standup Ice cream freezer
- 1        2 Door Retiring
- 2        Ice Bins
- 1 Lot   Forks



- 1 Lot   Knifes
- 1 Lot   Spoons
- 1 Lot   Utensils

## Dining Room

- 1 Lot   Booths
- 1 Lot   Booth tables
- 1 Lot   Chairs
- 38      Dinning Room tables
- 1 Lot   Ceiling Fans
- 1 Lot   Speakers
- 5       27'' Sharp TVS
- 1       Sony 60'' Big Screen

## Lounge

- 1 Lot   Bar Tables
- 17      Tables
- 1 Lot   Chairs
- 1 Lot   Booths
- 1 Lot   High top chairs

## Bar

- 1   Sink
- 1   3ft ice bin w/stand
- 1   4 bin bar sink
- 1   3ftx3ft ice bin
- 1   2 sided 4 door bar refrigerator with wood trim

- 3      20'' TV sharp
- 1 Lot   Shelving above bar
- 1        8 Tap beer tower

Bathrooms

- 3      Toilets
- 1      Urinal
- 3      Sinks
- 1 Lot   Stall dividers

Back Dock

- 1      Outdoor Walk-in Beer Cooler (for Kegs and Bottle beer storage)
- 1      Steamer (broken)
- 1 Lot   Shelving
- 2      8ft Dumpsters
- 1 Lot   Wood shelving
- 1      Hoshizaki Ice Machine
- 2      10# Can Racks

EXHIBIT A   PAGE 28

## EXHIBIT B

### TO

### AGREEMENT FOR PURCHASE AND SALE

### OF SPOONS RESTAURANT

### BILL OF SALE

19

# BILL OF SALE

**Spoons Restaurant, Inc.**, a Texas corporation ("**Seller**"), for good and valuable consideration, receipt of which is hereby acknowledged, hereby sells, transfers, assigns, conveys, and delivers to Hott Wings, Inc., a California corporation ("**Buyer**"), all of Seller's right, title, and interest in and to the FF&E, as defined in that certain Agreement for Purchase and Sale of Assets and Termination of Lease by and between Seller and Buyer, dated as of _____, 2007 (the "Purchase Agreement"), which includes those items listed on **Schedule 1** to this Bill of Sale.

Pursuant to the Approval Order entered on _____, the FF&E is being sold to Buyer, free and clear of any and all liens and encumbrances, in an "AS-IS, WHERE-IS" condition and without any representation or warranty, implied or express, including but not limited to any implied warranty of merchantability and fitness for any particular purpose Buyer accepts the same subject to all defects, whether now or later known. Buyer will have no right to the use of any trademarks or other proprietary marks of Seller which are included on or as part of the personal property conveyed pursuant hereto.

Effective as of _____, 2007.

**SPOONS RESTAURANT, INC.**, a Texas corporation

By: _____

Ken Mucha
Chief Executive Officer

20

**Schedule 1**

[list of FF&E to be inserted prior to Closing]

## EXHIBIT C

### TO

### AGREEMENT FOR PURCHASE AND SALE

### OF SPOONS RESTAURANT

### LEASE TERMINATION AGREEMENT

22

## LEASE TERMINATION AGREEMENT

THIS LEASE TERMINATION AGREEMENT (this "Agreement") is made this _____day of
_____, 2007, by and between Spoons Restaurant, Inc., a Texas corporation (Lessee"), and
_____ (collectively, "Lessor"), with reference to the following fact and
circumstances: [NOTE – CORRECT VESTING OF LESSOR TO BE DETERMINED AND
CONFIRMED PRIOR TO EXECUTION]

A.      Lessor or its predecessor-in-interest, previously leased to Lessee, or its predecessor-in-
interest, that certain real property commonly known as 1555 S. Bascom Ave., Campbell, California
95008 (the "Premises") pursuant to the terms of those certain lease documents more particular listed and
identified on Schedule 1 attached hereto (collectively, the "Lease").

B.      Lessee and Hott Wings, Inc., a California corporation ("New Lessee") have entered into
that certain Agreement for Purchase and Sale of Assets and Termination of Lease dated _____, 2007
(the "Purchase Agreement") pursuant to which Lessee has agreed to sell to New Lessee certain assets
associated with Lessee's operation of a restaurant at the Premises contingent upon, amongst other things,
(i) Lessor and New Lessee entering into a new lease for the Premises (the "New Lease"), and (ii) the
termination of the Lease on terms acceptable to Lessor and Lessee.

C.      Lessor and New Lessee have substantially concurrently herewith entered into the New
Lease.

D.      Lessor and Lessee now desire to terminate the Lease and release each other from their
respective obligations under the Lease upon the terms set forth below.

NOW, THEREFORE, incorporating the foregoing recitals and in consideration thereof, in consideration
of the mutual covenants and conditions contained herein, and for other good and valuable consideration,
the receipt and sufficiency of which is hereby acknowledged, the parties hereto agree as follows:

1.      Termination of Lease.  Concurrently with the Effective Date, and contingent upon
Lessee's delivery to Lessor of the Final Payment, Lessor and Lessee hereby confirm and agree that the
Lease shall terminate as of such date.  Lessee shall vacate the Premises on or before the Effective Date
and notwithstanding any other provisions of the Lease to the contrary specifying the required condition
of the Premises upon termination and surrender, Lessee's sole obligation with respect to the condition of
the Premises upon surrender of possession shall be to leave the Premises in a broom clean condition
(and Lessor understands and accepts that Lessee will leave in place certain furniture, fixtures and
equipment which is being sold to New Lessee pursuant to the Purchase Agreement).  Without limiting
the foregoing, Lessee shall not be required to remove any equipment, improvements or prior alterations,
or to restore any portion of the Premises to a prior condition.

2.      Final Rent Payment.  As consideration to Lessor for entering into this Agreement, Lessee
agrees to pay to Lessor concurrently with the Effective Date the sum of $_____[AMOUNT TO
BE DETERMINED PRIOR TO EXECUTION] (the "Final Payment").  Lessor and Lessee agree that
the Final Payment represents full, fair and bargained for compensation to Lessor with respect to any and
all unpaid base rent, percentage rent, maintenance charges, utility costs, real and personal property taxes,
costs of repair and restoration, deferred maintenance costs, attorneys' fees, and all other rents, fees,

23

costs, expenses, obligations and liabilities of Lessee with respect to the Lease and the Premises during the term of the Lease. Lessee's delivery of the Final Payment shall be contingent upon the occurrence of the "Closing" under the Purchase Agreement, and such sums shall be paid to Lessor from the proceeds received by Lessee at the Closing.

3.      Mutual Releases.      As of the Effective Date, and subject to Lessee's delivery of the Final Payment to Lessor, Lessor and Lessee hereby waive, release, remise, acquit and forever discharge each other and their respective trustees, directors, officers, shareholders, employees, and agents, heirs, successors, personal representatives and assigns, of and from any and all claims, actions, suits, legal or administrative orders or proceedings, demands, actual damages, consequential damages, punitive damages, losses, costs, liabilities and expenses, which concern or in any way relate to the Premises and the Lease (including, without limitation, any and all claims for unpaid base rent, percentage rent, maintenance charges, utility costs, real and personal property taxes, costs of repair and restoration, deferred maintenance costs, attorneys' fees, and all other rents, fees, costs, expenses, obligations and liabilities of Lessee with respect to the Lease and the Premises during the term of the Lease). Notwithstanding the foregoing, nothing contained herein shall release either party for liability associated with a breach of an express representation or warranty hereunder. Lessor and Lessee each expressly agrees to waive any and all rights which said party may have under Section 1542 of the California Civil Code which provides as follows:

> **"A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his settlement with the debtor."**

4.      Representations and Warranties.   The parties executing this Agreement on behalf of Lessor hereby represent and warrant that (i) they are collectively the true and correct parties owing 100% of the fee title interest in and to the Premises, (ii) they each have the authority and capacity to execute and deliver this Agreement and to cause this Agreement to be binding upon Lessor, (iii) neither Lessor nor any party comprising same, has sold, assigned, hypothecated or transferred its interest in either the Premises or the Lease, (iv) no consents from any party that is not a signatory to this Agreement (including any lender) are required in order for this Agreement to create a binding and enforceable obligation upon Lessor, and (v) each party hereto comprising Lessor will promptly execute and deliver to either Lessee, the Court or the escrow agent administering the Purchase Agreement such certifications, resolutions and other instruments reasonably required in order confirm the foregoing authority and capacity. Lessee hereby represent and warrant that, subject to procurement of Court approval (as referenced in Section 7 below) and the occurrence of the Closing pursuant to the Purchase Agreement, (i) Lessee has the authority and capacity to execute and deliver this Agreement and to cause this Agreement to be binding upon Lessee, (ii) Lessee has not sold, assigned, hypothecated or transferred its interest in the Lease, and (iii) no consents from any party that is not a signatory to this Agreement are required in order for this Agreement to create a binding and enforceable obligation upon Lessee.

5.      Effective Date.   As used herein, the "Effective Date" shall mean and refer to the date upon which the "Closing", as defined in the Purchase Agreement, has occurred.

6.      Recordation.  Lessor and Lessee shall, concurrently with the Effective Date, execute, acknowledge and cause to be recorded in the Official Records of Santa Clara County a memorandum of

this Agreement in a form reasonably acceptable to both parties, which will confirm of record the termination of the Lease.

7.   Bankruptcy Court Approval. Lessor acknowledges that Lessee is the subject of that certain chapter 11 bankruptcy case, case number SA 06-11444 ES, filed by Spectrum Restaurant Group, Inc., a Delaware corporation; Grandy's, Inc., a California corporation; Spoons Restaurants, Inc., a Texas corporation; Spectrum Foods, Inc., a California corporation; Crabby Bob's Franchise Corp., a California corporation; Local Favorite, Inc., a California corporation; substantively consolidated reorganized debtors under Case No. SA 03-15911 ES, as the debtor and debtor-in-possession. Said case has been filed in the United States Bankruptcy Court, Central District of California, Santa Ana Division (the "Court"). Lessee's performance under this Agreement and the occurrence of the Closing under the Purchase Agreement are subject to, and contingent upon, the approval of the Court. Lessor shall reasonably cooperate with Lessee in obtaining such Court approval at no material expense or liability to Lessor. If the Court does not approve of either this Agreement or the Purchase Agreement, this Agreement shall be of no force or effect and Lessor and Lessee shall have no liability or obligation hereunder.

8.   Miscellaneous.

(a)   Attorneys' Fees. In the event of any dispute between the parties hereto arising out of the subject matter of this Agreement, the prevailing party in such action shall be entitled to have and to recover from the other party its reasonable attorneys' fees and other reasonable expenses (including expert witness fees) in connection with such action or proceeding in addition to its recoverable court costs.

(b)   Interpretation; Governing Law. This Agreement shall be construed according to its fair meaning and as if prepared by both parties hereto. This Agreement shall be construed in accordance with the laws of the State of California in effect at the time of the execution of this Agreement. Titles and captions are for convenience only and shall not constitute a portion of this Agreement. As used in this Agreement, masculine, feminine or neuter gender and the singular or plural number shall each be deemed to include the others wherever and whenever the context so dictates.

(c)   Jurisdiction. The parties agree that the Court shall retain jurisdiction to resolve any disputes that arise out of or relate to this Agreement.

(d)   Modifications. Any alteration, change or modification of or to this Agreement, in order to become effective, shall be made by written instrument or endorsement thereon and in each such instance executed on behalf of each party hereto.

(e)   Merger of Prior Agreements and Understandings. This Agreement contains the entire understanding between the parties relating to the transaction contemplated hereby and all prior or contemporaneous agreements, understandings, representations and statements, oral or written, are merged in this Agreement and shall be of no further force or effect.

(f)   Execution in Counterpart. This Agreement may be executed in several counterparts, and all so executed shall constitute one agreement binding on all parties hereto, notwithstanding that all parties are not signatories to the original or the same counterpart. The

25