parties may also deliver executed copies of this Agreement to each other by facsimile, which facsimile signatures shall be binding.

IN WITNESS WHEREOF, Lessor and Lessee have executed this Agreement as of the date first written above.

"Lessee"

**SPOONS RESTAURANT, INC.**, a Texas corporation

By: _____

    Ken Mucha
    Chief Executive Officer

"Lessor"

_____

26

EXHIBIT A PAGE 30

## Schedule 1

### List of Lease Documents

EXHIBIT A PAGE 31

## SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release ("Agreement") is entered into as of

_July 19_ , 2007, by and between SPECTRUM RESTAURANT GROUP, INC.

("Spectrum"), SPOONS RESTAURANTS, INC. ("Spoons"), and DAVID M. KEESLING AND

BARBARA J. KEESLING, both individually and as trustees of THE KEESLING FAMILY

TRUST AS EXECUTED OCTOBER 14, 1984, and THE VOYTEK FAMILY INVESTMENT

COMPANY, LLC, a California Limited Liability Company (collectively, "Keesling Group").

Spectrum and Spoons are periodically referred to as "Debtors" and Spectrum, Spoons, and the

Keesling Group are periodically collectively referred to as the "PARTIES" to this Agreement

and individually as a "PARTY" to this Agreement.

### RECITALS

A.       In 1975, the Keesling Group (subject to a December 23, 1996, Bill of Sale And

Assumption of Lease and corresponding Grant Deed) owned property commonly known as 1555

S. Bascom Avenue, Campbell, California, Assessor Parcel Number (APN) 282-24-010

("Property").

B.       On January 6, 1975, the Property was leased to Flagg's Restaurants pursuant to a

written lease agreement ("Master Lease"). The Master Lease was for thirty (30) years with two

five (5) year options. Winslow Maxwell succeeded to the interests of Flagg's Restaurants,

Keesling Group consented to such succession by an assignment and consent dated January 27,

1977 and January 28, 1977, both of which were recorded in the Official Records of Santa Clara

County as Instrument No. 5544096, beginning on Page 717. Winslow Maxwell subleased the

premises to The Jolly Roger, Inc. under a sub-lease agreement dated April 15, 1981 ("Sub-

Lease") with consent pursuant to the Master Lease.

1

C.    Spoons succeeded to the interest of The Jolly Roger, Inc. pursuant to an assignment of

lease dated November 30, 1983, recorded in the Official Records of Santa Clara County as

Instrument No. 7937946, Book 1206, Page 71.

D.    On October 17, 1994, Keesling Group and Spoons entered into a Third Amendment to

the Master Lease. On December 6, 1994, Keesling Group and Spoons entered into a Non-

Disturbance and Abandonment Agreement. The Master Lease, among other things, required the

tenant to pay applicable real property taxes to the County of Santa Clara in a timely manner. The

Master Lease and related agreements provided tenant with an option to extend the term of lease

for two additional five year periods upon the same terms and conditions provided the tenant was

not in default of the various agreements.

E.    On August 6, 2003, Debtors commenced bankruptcy proceedings by filing voluntary

petitions under Chapter 11 of the Bankruptcy Code (In re: SPECTRUM RESTAURANT

GROUP, INC., a Delaware corporation; GRANDY'S, INC., a California corporation; SPOONS

RESTAURANT, INC., a Texas corporation; SPECTRUM FOODS, INC., a California

corporation; CRABBY BOB'S FRANCHISE CORP., a California corporation; LOCAL

FAVORITE, INC., a California corporation, Debtors. Case Nos. SA 03-15911 ES Consolidated

with Case Nos. SA 03-15912 ES; SA 03-15913 ES; SA 03-15914 ES; SA 03-15915 ES; SA 03-

15916 ES). ("First Bankruptcy")

F.    On August 6, 2004, the Bankruptcy Court entered an Order Confirming Debtors' Sixth

Amended Joint Chapter 11 Plan Of Reorganization [Modified as of June 30, 2004] ("2004

Plan"). Debtors contend that as part of the 2004 Plan they assumed the lease for the Property by

obligating themselves to make payments of pre-petition and pre-confirmation real property tax

lease obligations pursuant to particular provisions and varying cure schedules of the 2004 Plan


EXHIBIT B ² PAGE 39

and by making the required payments in accordance with particular provisions and the varying

cure schedules of the 2004 Plan. Keesling Group disputes this contention.

G.    On March 15, 2005, Debtors provided notice of exercise of the first five year option to

extend. Keesling Group promptly advised Debtors that the right to exercise the option to renew

did not exist and was not available because Debtors were in default of the various agreements.

H.    On March 3, 2006, Keesling Group filed a Complaint in Santa Clara Superior Court

against Defendants Spectrum Restaurant Group, Inc., Spoons Bar And Grill and Does 1-20,

Inclusive., Santa Clara Superior Court Action No.: 1-06-CV-059183 ("State Action"). The State

Action asserts, inter alia, causes of action for declaratory relief and cancellation of agreements.

The State Action alleges, in pertinent part, that Keesling Group was, as a result of various

agreements, Debtors' landlord for the Property; the tenant's option to renew was dependent on

the tenant not being in default at the time of the any attempt to exercise the option to extend; to

the extent tenant had not paid property taxes in a timely manner, the tenant would be in default

of the lease and precluded from attempting to exercise any option to extend the lease; that the

tenant was been in default of lease obligations to pay property taxes at the time tenant attempted

to exercise the option to extend; and tenant's March 15, 2005, attempt to exercise the option to

extend was not available and failed as a result of non-compliance with terms and conditions of

the lease agreements.

I.    On June 2, 2006, Debtors filed a Notice of Removal with the Santa Clara Superior Court

in the State Action attempted to remove the State Action to Debtors' First Bankruptcy. On June

16, 2006, Debtors filed a Notice of Removal with the Bankruptcy Court in the First Bankruptcy.

On July 3, 2006, Keesling Group filed a Motion To Remand. Debtors did not file an opposition.

On or about August 4, 2006, Keesling Group and Debtors stipulated to an order of remand. On

3

EXHIBIT B   PAGE 40

August 7, 2006, the Court entered an order approving the stipulation and remanding the State

Action. The State Action remains pending. Debtors filed an answer in the State Action and a

cross complaint for damages against the Keeling Group for alleged violation of the injunction

imposed by the 2004 Plan and applicable provisions of the United States Bankruptcy Code.

J.      Debtors did not timely pay real property taxes on the Property pursuant to the lease

agreements on December 10, 2003 and April 10, 2004. Further, Debtors did not timely pay pre-

petition and post-petition real property taxes on the Property pursuant to the 2004 Plan, with

partial payments posted by the County of Santa Clara Tax Assessor, on December 30, 2004,

December 23, 2005, June 6, 2006, and June 15, 2006. During the pendency of the Second

Bankruptcy Debtors have made payment (s) of real property taxes on the Property. According to

the County of Santa Clara Tax Assessor, the total amount due by March 31, 2007 for prior years

real property taxes was $36,575.31, the amount due by April 10, 2007, was $29,477.07, and

these amounts do not include credits held in the assessor's trust account of $31,363.15. These

amounts do not include any further interest, penalty, of fees chargeable or charge by the assessor

after these respective dates.

K.      On August 30, 2006, Debtors filed a second petition for bankruptcy and commenced this

bankruptcy matter, (In re SPECTRUM RESTAURANT GROUP, INC., a Delaware corporation;

GRANDY'S, INC., a California corporation; SPOONS RESTAURANT, INC., a Texas

corporation; SPECTRUM FOODS, INC., a California corporation; CRABBY BOB'S

FRANCHISE CORP., a California corporation; LOCAL FAVORITE, INC., a California

corporation, Debtors. Case Nos. SA 06-11444. ("Second Bankruptcy")

L.      On December 19, 2006, this Court granted Keesling Group's motion for relief from stay

so Keesling Group could continue prosecution of its pre-petition state action. Such relief granted

4



EXHIBIT B PAGE 41

relief from stay effective January 16, 2007. On January 3, 2007, this Court entered a formal order

granting this relief from stay.

M.       In November 2006, Debtors filed a motion for an order extending time to assume or

reject unexpired leases of nonresidential real property. Debtors' motion included Debtors' lease

agreements for the Property. Debtors' motion was granted and an order entered by the

Bankruptcy Court.

N.       On January 31, 2007, Keesling Group filed two Proofs of Claim in the Second

Bankruptcy, Claim No. 344 in the amount of $215,925.42 reflecting Keesling Group's estimate

of breach of lease damages and Claim No. 345 in the amount of $4,782.15 reflecting Keesling

Groups' costs incurred relative to the removal and remand of the State Action in the First

Bankruptcy.

O.       On or about February 26, 2007, Debtors filed a motion for an order authorizing Debtors'

assumption of certain unexpired leases of nonresidential real property pursuant to 11 U.S.C. §

365 ("Assumption Motion"). Debtors' motion included Debtors' lease agreements for the

Property. Keesling Group filed an opposition to Debtors' motion on the grounds, inter alia,

Debtors' lease with Keesling Group expired pre-petition and therefore did not have any

leasehold interests to assume. Debtors submitted a reply contending, inter alia, that the 2004 Plan

resolved any alleged defaults under the lease agreements; Debtors' complied with the 2004 Plan;

and had properly exercise its rights to extend the lease agreements. Debtors' motion was heard

on March 20, 2007 and continued to April 10, 2007. As part of the hearing Keesling Group

agreed to extend Debtors' statutory deadline to assume or reject to April 10, 2007.

P.       The Bankruptcy Court entered an order approving a stipulation between Debtors and

Keesling Group continuing the hearing on the Assumption Motion, extending Debtors' statutory

5

deadline to assume or reject until June 12, 2007, and continuing the hearing on the Assumption

Motion to June 12, 2007.

Q.      Debtors are continuing to occupy and operate business at the Property as a holdover

tenant.

R.      Debtors and Keesling Group now desire to fully and finally settle and terminate all

differences, disputes, disagreements, and agreements between them concerning the Property,

lease agreements, First Bankruptcy, Second Bankruptcy, and State Action, without further

dispute or litigation, in accordance with the terms and conditions set forth in this Agreement.

NOW, THEREFORE, for and in consideration of the mutual promises, covenants and

understandings contained herein, and for other good and valuable consideration, the receipt and

adequacy of which is hereby acknowledged, and intending to be legally bound, the PARTIES,

including each of the Debtors in the Second Bankruptcy, agree as follows:

1.      **Agreements:**

**1.1      Bankruptcy Court Approval.** This Agreement and each of the provisions stated

herein is subject to Bankruptcy Court's approval of (i) Debtors' rejection of the Master Lease,

Sub-Lease, Third Amendment to the Master Lease, the Non-Disturbance and Abandonment

Agreement and any other documents related to Debtors' possession of the Property (collectively,

the "Lease Related Documents") and the (ii) the terms and provisions of this Agreement.  Such

Bankruptcy Court approval shall become effective eleven (11) days after such order approving

such matters is entered with the Bankruptcy Court (the "Approval Order").  Keesling Group shall

reasonably cooperate with Debtors in Debtors' efforts to obtain the Approval Order.

**1.2      Termination of Lease Related Agreements.** All agreements between Debtors

and Keesling Group relating to the Property, including but not limited to the Lease Related

6


EXHIBIT B PAGE 43

Documents, were terminated effective August 30, 2005.

**1.3    Right To Extend Lease Related Agreements.** Debtors were in default of the lease agreements at the time they attempted to exercise the option to extend, were therefore not available entitled to exercise this option to extend, and said option to extend expired by its stated terms effective August 30, 2005.

**1.4    Debtors Payment of Real Property Taxes.** Debtors will, concurrently with, and contingent upon, the occurrence of the Settlement Date (as defined in Section 1.10 below) pay to the County of Santa Clara (the "County") all past and current real property taxes due and payable prior to April 11, 2007, including applicable interest, penalties, and fees on the Property, which payment will constitute payment to the County of taxes owing through June 30, 2007 (i.e., through the end of the 2006-2007 fiscal tax year). If the Settlement Date occurs prior to June 30, 2007, the Keesling Group will pay to Debtors concurrently with the Settlement Date the Per Diem Amount (defined below) multiplied by the number of days between the Settlement Date and June 30, 2007. Alternatively, if the Settlement Date occurs after June 30, 2007, Debtor's will pay to the Keesling Group concurrently with the Settlement Date the Per Diem Amount (defined below) multiplied by the number of days between June 30, 2007 and the Settlement Date. Debtors will provide Keesling Group with evidence of applicable payments to and receipt by the County. Keesling Group will be entitled to a priority administrative claim if these payments are not made and for any amounts remaining due and payable by the County of Santa Clara Tax Assessor with respect to the Property. For purposes of this Agreement, the "Per Diem Amount" is conclusively agreed to be $77.00, without consideration as to whether actual assessed property taxes for the period in question differ from this amount. Keesling Group agrees that Debtors' payment of the sums specified in this Section 1.4 represents full, fair and


EXHIBIT B PAGE 44

bargained for compensation to Keesling Group with respect to any and all unpaid real property

taxes with respect to the Property and the Lease Related Documents. The preceding sentence

shall not release Debtors' from their obligations under the Lease Related Documents from the

date of this Agreement until the Settlement Date as set forth in Section 1.5 below,

**1.5    Binding Nature of Remaining Lease Provisions; Adjustment of Monthly**

**Rent.** Except as may otherwise be expressly provided in this Agreement, from the date of this

Agreement until the Settlement Date the Parties will honor all remaining applicable provisions of

the Lease Related Documents. Notwithstanding the foregoing, for the period of time

commencing upon the mutual execution of this Agreement and ending upon the first to occur of

(i) the Settlement Date, or (ii) the date upon which this Agreement terminates or otherwise

expires and becomes of no force or effect, the monthly rent payable by Debtors under the Lease

Related Documents shall be Six Thousand Nine Hundred Eighty-Six and 18/100 Dollars

($6,986.18), prorated for any partial month. In the event this Agreement terminates or otherwise

expires and becomes of no force or effect, monthly rent shall revert to the amount payable under

the Lease Related Documents effective as of the date of such termination.

**1.6    Debtors' Occupancy and Use of The Property Through Termination.** Debtors

will be allowed to continue occupancy and use of the Property in accordance with the

agreements between Debtors and Keesling Group relating to the Property, including but not

limited to the Lease Related Documents, until Debtors' occupancy and use of the Property are

terminated upon the occurrence of the Settlement Date. Notwithstanding anything in the Lease

Related Documents to the contrary, Debtors shall have the right, at its/their option, to terminate

business operations from the Property prior to the Settlement Date.

EXHIBIT B PAGE 45

**1.7    Termination of Debtors' Occupancy and Use of The Property.** Debtors'

occupancy and use of the Property shall, subject only to extension by further written agreement

between Debtors and Keesling Group, terminate on the Settlement Date, at which time  Debtors'

will return sole and exclusive possession and control of the Property to Keesling Group pursuant

to the terms of the agreements between Debtors and Keesling Group relating to the Property,

including the Lease Related Documents.  Notwithstanding any provisions of the Lease Related

Documents to the contrary specifying the required condition of the Property upon termination

and surrender, (i) Debtors' sole obligation with respect to the condition of the Property upon

surrender of possession shall be to leave the Property in a broom clean condition (which may

include leaving in place certain furniture, fixtures and equipment as part of Debtors' disposition

thereof), and (ii) Debtors shall not be required to remove any equipment, improvements or prior

alterations, to restore any portion of the Property to a prior condition, or to correct any so-called

"deferred maintenance".  Following the Settlement Date and the performance by the Parties of

their respective obligations hereunder, and upon request by either Party, the Parties will execute,

acknowledge and cause to be recorded in the Official Records of Santa Clara County a

termination agreement confirmation the termination of the Lease Related Documents in such

form as either party may reasonably request.

**1.8    Right To Inspect Property.** Debtors will allow Keesling Group the right to

inspect (excluding destructive testing), advertise, show to prospective tenants or buyers, lease,

and/or sell the Property on reasonable notice to Debtors provided that such entry and inspection

does not interfere with Debtors' business operations.

**1.9    Debtors' Disposition of Personal Property At The Property.**  Keesling Group

acknowledges and agrees that Debtors shall be permitted to sell and transfer to Hott Wings

9



pursuant to the transaction contemplated in Section 1.10 below any and all of its personal

property situated at, or related to the Property, including but not limited to fixtures, equipment,

capital improvements, licenses and miscellaneous items,and that Debtors shall be entitled to

retain any and all consideration that Debtors may received from any party in connection

therewith.

**1.10    Determination of "Settlement Date".**  Keesling Group understands that the

effectiveness of this Agreement (i.e., the occurrence of the Settlement Date as defined below) is

contingent upon the successful closing of the pending transaction between Debtors and Hott

Wings, Inc., a California corporation ("Hott Wings"), pursuant to which Debtors are selling

certain assets associated with Debtors' restaurant currently operated at the Property (the "Hott

Wings Transaction").  For purpose of this Agreement, the "Settlement Date" shall mean and

refer to the date upon which BOTH (i) the Approval Order has been entered by the Bankruptcy

Court and eleven (11) days have elapsed following such entry, <u>and</u> (ii) the Hott Wings

Transaction has closed.  Debtors shall advise Keesling Group in writing upon the closing of the

Hott Wings Transaction, with such notice being referred to herein as the "Debtor Termination

Notice".  Keesling Group understands that if the Hott Wings Transaction does not close then

Debtors will not deliver the Debtor Termination Notice and the Settlement Date will not occur.

Keesling Group shall be required to accept the Debtor Termination Notice and the effect thereof

if such notice is delivered on or prior to November 30, 2007.  Notwithstanding the foregoing, if

the Settlement Date has not occurred by November 30, 2007, then in the absence of the

agreement of the Parties to extend the effectiveness of this Agreement, this Agreement shall be

deemed terminated, null and void, and of no force or effect.  If the Hott Wings Transaction

terminates, Debtors shall also have the right to deliver written notice to Keesling Group prior to

EXHIBIT B PAGE 47

November 30, 2007, advising Keesling Group of such fact and that as a result Debtors do not intend to deliver the Debtor Termination Notice, in which event this Agreement shall terminate as provided in the preceding sentence.

**1.11   Continuance of Assumption Motion and Extension of Time to Assume or Reject Lease.** The Parties Agree that the hearing on the Assumption Motion and the date by which the Lease must be assumed or rejected pursuant to 11 U.S.C. § 365 shall be continued to a date after the earlier of the Settlement Date or the date this Agreement is terminated. The Parties agree that Keesling Group's and the Debtor's consent to the continuance and extension set forth in this paragraph shall not be construed against either Party to support an argument of waiver, estoppel, or laches.

**2.0.    Dismissal Of State Action.** Keesling Group will, within fifteen (15) days following the Settlement Date and confirmation of Debtors' compliance with this Agreement and return of possession and control of the Property to Keesling Group, file a Request For Dismissal with the Santa Clara Superior Court dismissing the State Action with prejudice (and concurrently provide Debtors with a copy of same), and Debtors will dismiss the cross-complaint with prejudice (and concurrently provide Keesling Group with a copy of same).

**3.0    Withdrawal Of Proofs Of Claim.** Keesling Group will, within fifteen (15) days following the Settlement Date and confirmation of Debtors' compliance with this Agreement and return of possession and control of the Property to Keesling Group, file a notice of withdrawal of Proofs of Claim, withdrawing Proof of Claims Nos. 344 and 345 (and concurrently provide Debtors with a copy of same).

**4.0    Withdrawal of Motion For Costs On Remand.** Keesling Group will, within fifteen (15) days following the Settlement Date and confirmation of Debtors' compliance with



EXHIBIT  B  11  PAGE  48

this Agreement and return of possession and control of the Property to Keesling Group, file a

notice with the Bankruptcy Court in the First Bankruptcy withdrawing its pending motion for

costs on remand (and concurrently provide Debtors with a copy of same).

### 5.0    Release By Debtors.

Concurrently with, and contingent upon, the Settlement Date and the performance by the

Keesling Group of its obligations hereunder, Debtors, on behalf of themselves and their

respective past and present partners, members, parents, affiliates, subsidiaries, predecessors,

successors, assigns, beneficiaries, executors, administrators, employees, representatives,

independent contractors, shareholders, officers, directors, principals, agents, attorneys, and all

persons acting by, through, or in concert with them, hereby release, acquit, and forever discharge

Keesling Group and each of their respective past and present partners, parents, affiliates,

subsidiaries, predecessors, successors, assigns, beneficiaries, executors, administrators,

employees, representatives, independent contractors, shareholders, officers, directors, principals,

agents, attorneys, and all persons acting by, through, or in concert with them, from any and all

claims, actions, causes of action, demands, rights, obligations, liabilities, losses, indebtedness,

liens, damages, costs, expenses, and compensation of every nature whatsoever, whether known,

unknown, fixed or contingent, which they, at any time heretofore had, owned, held, or claimed to

have, own, or hold or at any time now or hereafter has, owns, holds, or claims to have, own or

hold, that arise out of, are in any way related to, Debtors' occupancy and use of the Property

(including the Lease Related Documents), the Property, the State Action, the First Bankruptcy,

or the Second Bankruptcy.

### 6.0    Release By Keesling Group.

Concurrently with, and contingent upon, the Settlement Date and the performance by the

Debtors of their obligations hereunder, Keesling Group and its respective past and present

partners, parents, affiliates, subsidiaries, predecessors, successors, assigns, beneficiaries,

executors, administrators, employees, representatives, independent contractors, shareholders,

officers, directors, principals, agents, attorneys, and all persons acting by, through, or in concert

with it, hereby releases, acquits, and forever discharges Debtors and each of their respective past

and present partners, parents, affiliates, subsidiaries, predecessors, successors, assigns,

beneficiaries, executors, administrators, employees, representatives, independent contractors,

shareholders, officers, directors, principals, agents, attorneys, and all persons acting by, through,

or in concert with them, from any and all claims, actions, causes of action, demands, rights,

obligations, liabilities, losses, indebtedness, liens, damages, costs, expenses, and compensation

of every nature whatsoever, whether known, unknown, fixed or contingent, which they, at any

time heretofore had, owned, held, or claimed to have, own, or hold or at any time now or

hereafter has, owns, holds, or claims to have, own or hold, that arise out of, are in any way

related to, Debtors' occupancy and use of the Property (including the Lease Related Documents),

the Property, the State Action, the First Bankruptcy, or the Second Bankruptcy.  The foregoing

includes a release of any and all claims and demands for rent, maintenance charges, utility costs,

real and personal property taxes, costs of repair and restoration, deferred maintenance costs,

attorneys' fees, and all other rents, fees, costs, expenses, obligations and liabilities of Debtors

with respect to the Property and the Lease Related Documents.

    **7.0**    **Waiver of California Civil Code Section 1542.** Each PARTY agrees that, if at

any time after the Settlement Date and the performance by the Parties of their respective

obligations hereunder, any injury, loss or damage is sustained in connection with any matter

released, acquitted or discharged in this Agreement which is not now known or suspected, or in

EXHIBIT $B$ PAGE 50

13

the event that the loss or damage now known has consequences or results not known or

suspected, this Agreement shall nevertheless constitute a full and final release as to the

PARTIES and matters herein released, and this release shall apply to and include all such

unknown or unsuspected consequences or results. Each PARTY acknowledges that it is aware

of and hereby expressly waives all rights and benefits pursuant to Section 1542 of the California

Civil Code, which provides:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH
> THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR
> HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF
> KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS
> OR HER SETTLEMENT WITH THE DEBTOR.

**8.0     No Assignment.**

Each PARTY represents and warrants that except as stated herein no portion of any

claim, right, demand, action or cause of action which it has or might have arising out of the

matters referred to herein, nor any portion of any recovery or settlement to which it might be

entitled, has been assigned or transferred to any other person, including by way of subrogation or

operation of law or otherwise, and that it is the legal and beneficial owner of such claims free

and clear of all liens, claims, encumbrances and charges. In the event that any claim, demand, or

suit should be made or instituted against a PARTY hereto because of any such purported or

actual assignment, subrogation, or transfer, or any such purported or actual lien, claim,

encumbrance or charge not stated herein, each PARTY agrees to indemnify and hold harmless

the other PARTY against such claim, suit or demand and to pay and satisfy any claim, suit or

demand, including necessary and reasonable expenses of investigation and attorneys' fees and

costs.

**9.0    Binding Effect; Survival of Obligations.**

This Agreement shall be binding upon and shall inure to the benefit of the PARTIES hereto and each of their respective heirs, spouses, executors, administrators, representatives, successors, assigns, partners, parents, subsidiaries, affiliated and related entities, officers, directors, principals, and agents, subject to any exceptions or restrictions expressly contained herein. The covenants and obligations of the Parties shall, to the extent they have not then been performed, survive the occurrence of the Settlement Date and remain in effect as enforceable obligations.

**10.0    Governing Law.**

This Agreement shall be construed in accordance with and governed in all respects by the laws of the State of California without regard to conflict of law principles and, as applicable, of the United States; provided that the Parties acknowledge and agree that the Bankruptcy Court has jurisdiction of the subject matter of this Agreement.

**11.0    Integration.**

This Agreement, except for the Master Lease, Sub-Lease, Third Amendment to the Master Lease, and the Non-Disturbance and Abandonment Agreement, constitute a single, integrated written contract expressing the entire agreement of the PARTIES hereto relative to the subject matter hereof. No covenants, agreements, representations or warranties of any kind whatsoever have been made by any party hereto except as stated herein. Except for the Master Lease, Sub-Lease, Third Amendment to the Master Lease, and the Non-Disturbance and Abandonment Agreement, all prior discussions and negotiations whether written or oral have been and are merged and integrated into, and are superseded by this Agreement. This Agreement may be altered or amended only by a writing signed by all of the PARTIES.

**12.0    Counterparts.**

This Agreement may be executed in several counterparts, each of which shall be deemed

an original and all of which when taken together shall constitute the whole of the Agreement as

between the PARTIES. Facsimile signatures shall be deemed original signatures for purposes of

this Agreement. True and correct copies of the fully executed Agreement will be effective to

enforce the terms and provisions set forth herein against any of the PARTIES.

**13.0    Attorneys' Fees and Costs.**

Each PARTY agrees that it shall bear its own attorneys' fees and costs incurred in the

prosecution, defense, and settlement of the State Action. In the event of any dispute between the

Parties resulting from the interpretation or enforcement of this Agreement, the prevailing party in

such action shall be entitled to have and to recover from the other party its reasonable attorneys'

fees and other reasonable expenses (including expert witness fees) in connection with such

action or proceeding in addition to its recoverable court costs.

**14.0    Representation.**

Each PARTY acknowledges and agrees that it has been represented by counsel of its

choice and has had a reasonable opportunity to discuss this Agreement with its counsel. Each

PARTY further represents and warrants that it has the authority and capacity to execute this

Agreement, does so knowingly and voluntarily, and does so in the absence of any mistake,

duress or coercion. Without limiting the foregoing, the Keesling Group, and each of them,

hereby represent and warrant that (i) they are collectively the true and correct parties owning

100% of the fee title interest in and to the Property, (ii) they each have the authority and capacity

to execute and deliver this Agreement and to cause this Agreement to be binding upon the fee



owner of the Property, (iii) neither the Keesling Group nor any party comprising same, has sold, assigned, hypothecated or transferred its interest in either the Property or the Lease Related Documents, (iv) no consents from any party that is not a signatory to this Agreement (including any lender) are required in order for this Agreement to create a binding and enforceable obligation upon Keesling Group, and each of them, and (v) each party hereto comprising Keesling Group will promptly execute and deliver to either Debtors or the Bankruptcy Court such certifications, resolutions and other instruments reasonably required in order confirm the foregoing authority and capacity.

### 15.0   Contingent Effectiveness of Factual Statements and Performances.

Notwithstanding anything contained in this Agreement to the contrary, the statements contained in, and the performances required by, this Agreement which are adverse or potentially adverse to the parties' interests shall not be deemed to be factually accurate, to constitute evidence against the parties' interests, or otherwise constitute admissions of any kind by any party hereto, unless and until the Settlement Date occurs. Without limiting the foregoing, Debtors' agreement to pay increased monthly rental for the term of this Agreement as specified in Section 1.5 above shall not constitute an admission that Debtors are a holdover tenant or that Debtors did not validly exercise its option to extend the leasehold unless and until the Settlement Date occurs. If the Settlement Date does not occur for any reason and this Agreement is terminated, then such statements and actions shall be of no force or effect and such statements and actions, and the effect thereof, shall not be admissible in any Court or proceeding in any manner which is adverse to the parties' interests.

IN WITNESS WHEREOF, the PARTIES hereto have executed and notarized this

Agreement as of _Jacy 19_ , 2007, as follows.

SPECTRUM RESTAURANT GROUP, INC.

_____
By: Kenneth Mucha, Chief Executive Officer

SPOONS RESTAURANTS, INC.

_____
By: Kenneth Mucha, Chief Executive Officer

_____
DAVID M. KEESLING, AS TRUSTEE OF THE
KEESLING FAMILY TRUST AS EXECUTED
OCTOBER 14, 1984

_____
BARBARA J. KEESLING, AS TRUSTEE OF
THE KEESLING FAMILY TRUST AS
EXECUTED OCTOBER 14, 1984

_____
DAVID M. KEESLING, an individual

_____
BARBARA J. KEESLING, an individual

THE VOYTEK FAMILY INVESTMENT
COMPANY a California limited liability company

By:_____
Its:_____
Please Print:_____

18

IN WITNESS WHEREOF, the PARTIES hereto have executed and notarized this

Agreement as of _July 19_, 2007, as follows.

SPECTRUM RESTAURANT GROUP,

INC.

By: Kenneth Mucha, Chief Executive Officer

SPOONS RESTAURANTS, INC.

By: Kenneth Mucha, Chief Executive Officer

_per power of Attorney_
DAVID M. KEESLING, AS TRUSTEE OF
THE KEESLING FAMILY TRUST AS
EXECUTED OCTOBER 14, 1984

_per power of Attorney_
BARBARA J. KEESLING, AS TRUSTEE
OF THE KEESLING FAMILY TRUST AS
EXECUTED OCTOBER 14, 1984

_per power of Attorney_
DAVID M. KEESLING, an individual

_per power of Attorney_
BARBARA J. KEESLING, an individual

THE VOYTEK FAMILY INVESTMENT
COMPANY a California limited liability
company

By: _David M. Voytek_
Its: _Member Manager_

_Exhibit B Page 56_

**PROOF OF SERVICE**

STATE OF CALIFORNIA,

COUNTY OF ORANGE

     I am employed in the County of Orange, State of California.  I am over the age of 18 and not a party to the within action; my business address is 650 Town Center Drive, Suite 950, Costa Mesa, California 92626.

     On August 6, 2007, I served the foregoing document described as **ORDER GRANTING DEBTOR-IN-POSSESSION'S MOTION FOR ORDER AUTHORIZING AND APPROVING:(1)SALE OF CERTAIN ASSETS OF THE ESTATE FREE AND CLEAR OF LIENS, CLAIMS, AND INTERESTS;(2)LEASE TERMINATION AGREEMENT; AND (3)COMPROMISE OF CONTROVERSY PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 9019** on the interested parties in this action by placing true copies thereof enclosed in sealed envelopes addressed as stated on the attached mailing list.

[✓]    BY MAIL

     [ ]    I deposited such envelope in the mail at Costa Mesa, California. The envelope was mailed with postage thereon fully prepaid.

     [✓]    I deposited such envelope with the firm for collection and processing.  I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing.  It is deposited with U.S. postal service on that same day with postage thereon fully prepaid at Costa Mesa, California in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

     Executed on August 6, 2007, at Costa Mesa, California.

[ ]    (State) I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

[✓]    (Federal) I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.  I declare under the penalty of perjury under the laws of the United States of America that the above is true and correct.

Kelly M. Rivera
Type or print name

Signature

In re Spectrum Restaurant Group, Inc.
Case No. SA 06-11444 ES
July 13, 2007
Document #221040(KR)

## SERVICE LIST:

**United States Trustee**
411 W. 4th Street
Suite 9041
Santa Ana, CA 92701

Ken Mucha, CEO
Spectrum Restaurant Group, Inc.
18500 Von Karman Avenue., Suite 380
Irvine, CA 92612
**Debtor and Debtor-in-Possession**

Jeffrey N. Pomerantz, Esq.
Pachulski, Stang, Ziehl, Young,
  Jones & Weintraub PC
10100 Santa Monica Blvd., Ste. 1100
Los Angeles, CA 90067
**Attorneys for The Official**
**Committee of Unsecured Creditors**

Penelope Parmes, Esq.
Rutan & Tucker, LLP
611 Anton Blvd., Suite 1400
Costa Mesa, CA 92626
**Attorneys for Secured Creditor, BET**

Todd C. Ringstad, Esq.
Ringstad & Sanders LLP
2030 Main St #1200
Irvine, CA 92614
**Attorneys for Anwar Soliman**

Anwar Soliman
375 Camden Place
Laguna Beach, CA 92651
**Shareholder**

Hott Wings, Inc.
400 Lyell Avenue, Suite 101
Modesto, CA 95356
**[Proposed Purchaser]**

Petrulakis Jensen & Friedrich, LLP
Attn: Matthew I. Friedrich
1130 12th Street, Suite B
Modesto, CA 95354
**[Attorneys for Proposed Purchaser]**

Campeau Goodsell Smith, L.C.
Attn: William J. Healy
38 West Santa Clara Street
San Jose, CA 95113
**[Attorneys for Landlord]**

State Board of Equalization
P.O. Box 942879
Sacramento, CA 95812-0090

Winslow Maxwell
2476 Bayshore Drive
Newport Beach, CA 92663

Mr. Elias Tsigaris
EP&G Properties
1543 Meridian Avenue
San Jose, CA 95125

Elias Tsigaris
1547 Meridian Avenue
San Jose, CA 95125

California Department of Alcoholic Beverage Control
Attn: David Goss, Acting Director
3927 Lennane Drive, Suite 100
Sacramento, CA 95834

State Board of Equalization
Account Reference Group, MIC: 29
P.O. Box 942879
Sacramento, CA 94279-0029

State Board of Equalization
450 N. Street
P.O. Box 942879
Sacramento, CA 94279-0001

County of Santa Clara Tax Collector
70 West Hedding Street
East Wing, 6th Floor
San Jose, CA 95110

NOTE TO THE USERS OF THIS FORM:
Physically attach this form as the last page of the proposed Order or Judgment
Do not file this form as a separate document.

_____(Short Title)_____    Chapter 11 Case Number_____

**IN RE SPECTRUM RESTAURANT GROUP, INC.**        **SA 06-11444 ES**

# NOTICE OF ENTRY OF JUDGMENT OR ORDER
# AND CERTIFICATE OF MAILING

TO ALL PARTIES IN INTEREST ON THE ATTACHED SERVICE LIST:

1.   You are hereby notified, pursuant to Local Bankruptcy Rule 9021-1, that a judgment or order entitled (specify):

**ORDER GRANTING DEBTOR-IN-POSSESSION'S MOTION FOR ORDER AUTHORIZING AND APPROVING:(1)SALE OF CERTAIN ASSETS OF THE ESTATE FREE AND CLEAR OF LIENS, CLAIMS, AND INTERESTS;(2)LEASE TERMINATION AGREEMENT; AND (3)COMPROMISE OF CONTROVERSY PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 9019**

was entered on (specify date):   AUG 0 8 2007

2.   I hereby certify that I mailed a copy of this notice and a true copy of the order or judgment to the persons and entities on the attached service list on (specify date): AUG 0 8 2007

DATED:   AUG 0 8 2007

Clerk of the Bankruptcy Court

By: _Glenda K. DeRamus_

Deputy Clerk

**In re Spectrum Restaurant Group, Inc.**
**Case No. SA 06-11444 ES**
**July 13, 2007**
**Document #221040(KR)**

## SERVICE LIST:

**United States Trustee**
411 W. 4th Street
Suite 9041
Santa Ana, CA 92701

Ken Mucha, CEO
Spectrum Restaurant Group, Inc.
18500 Von Karman Avenue., Suite 380
Irvine, CA 92612
**Debtor and Debtor-in-Possession**

Jeffrey N. Pomerantz, Esq.
Pachulski, Stang, Ziehl, Young,
  Jones & Weintraub PC
10100 Santa Monica Blvd., Ste. 1100
Los Angeles, CA 90067
**Attorneys for The Official**
**Committee of Unsecured Creditors**

Penelope Parmes, Esq.
Rutan & Tucker, LLP
611 Anton Blvd., Suite 1400
Costa Mesa, CA 92626
**Attorneys for Secured Creditor, BET**

Todd C. Ringstad, Esq.
Ringstad & Sanders LLP
2030 Main St #1200
Irvine, CA 92614
**Attorneys for Anwar Soliman**

Anwar Soliman
375 Camden Place
Laguna Beach, CA 92651
**Shareholder**

Hott Wings, Inc.
400 Lyell Avenue, Suite 101
Modesto, CA 95356
**[Proposed Purchaser]**

Petrulakis Jensen & Friedrich, LLP
Attn: Matthew I. Friedrich
1130 12th Street, Suite B
Modesto, CA 95354
**[Attorneys for Proposed Purchaser]**

Campeau Goodsell Smith, L.C.
Attn: William J. Healy
38 West Santa Clara Street
San Jose, CA 95113
**[Attorneys for Landlord]**

State Board of Equalization
P.O. Box 942879
Sacramento, CA 95812-0090

Winslow Maxwell
2476 Bayshore Drive
Newport Beach, CA 92663

Mr. Elias Tsigaris
EP&G Properties
1543 Meridian Avenue
San Jose, CA 95125

Elias Tsigaris
1547 Meridian Avenue
San Jose, CA 95125

California Department of Alcoholic Beverage Control
Attn: David Goss, Acting Director
3927 Lennane Drive, Suite 100
Sacramento, CA 95834

State Board of Equalization
Account Reference Group, MIC: 29
P.O. Box 942879
Sacramento, CA 94279-0029

State Board of Equalization
450 N. Street
P.O. Box 942879
Sacramento, CA 94279-0001

County of Santa Clara Tax Collector
70 West Hedding Street
East Wing, 6th Floor
San Jose, CA 95110

Philip E. Strok, Esq.
Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, CA 92626
**Attorneys for Debtor**